GUARANTY MORTGAGE CO. v. WILCOX.

No. 3919.   Decided July 19, 1923.   Rehearing Denied September
7, 1923.   (218 Pac. 138.)

1. EXCEPTIONS, BILL OF—NOT STRICKEN MERELY BECAUSE FILED BY PARTY WHO HAS TAKEN NO APPEAL. Under Comp. Laws 1917, § 6969, the right to have settled and allowed a bill of exceptions is not limited to the party who appeals, and the fact that a bill of exceptions was filed by a party who has taken no appeal is not grounds for striking it.[1]

2. APPEAL AND ERROR—JUDGMENT CANNOT BE REVERSED UNLESS INVASION OR DISREGARD OF SUBSTANTIAL RIGHTS SHOWN. Under the statute a judgment may not be reversed unless substantial rights of the complaining party have been invaded or disregarded.

[1] Railroad v. Board of Education, 35 Utah, 13, 99 Pac. 263.
[2] Powers v. Lawson, 56 Utah, 420, 191 Pac. 227.

3. Corporations—Licenses—Agreement to Take Stock Held not "Subscription," but Purchase Void Under Blue Sky Law. An agreement to "subscribe" for part of increase issue of pre-ferred stock to be issued by a then going mortgage company, *held* a purchase, and not a "subscription," which is ordinarily an agreement for stock in a prospective corporation, and as a sale, void under Blue Sky Law, as amended by Laws 1921, c. 131, the corporation having no license.

4. Licenses—Drastic Penalties Prescribed not Grounds for Re-laxing Strictness of Blue Sky Law. The drastic penalties and harsh consequences for violations of the Blue Sky Law, as amended by Laws 1921, c. 131, do not authorize the courts to adopt a liberal construction or except transactions from the purview of that statute when clearly within both the spirit and letter.

5. Appeal and Error—Mere Absence of Cross-appeal not Grounds for Striking Assignment of Cross-errors. The fact that an appellee who has assigned cross-errors has not taken a cross-appeal is not grounds for striking his assignment of cross-errors, though some of. them may be such as cannot be considered.[2]

6. Costs—Appellee Held not Entitled to Recover Costs of Pre-paring Unnecessary Printed Abstract and Half of Bill of Exceptions. Where an appellee, without taking a cross-appeal, had settled and allowed a bill of exceptions containing much unnecessary evidence, and filed an additional abstract, nearly all of which was unnecessary to a consideration of appellant's case, *held* that he was entitled to tax costs only for 25 pages of his original brief, a supplemental brief, and one-half of the bill of exceptions.

Appeal from District Court, Second District, Weber Coun-ty; *J. N. Kimball,* Judge.

Action by the Guaranty Mortgage Company against M. E. Wilcox. Judgment for defendant on the counterclaim, and plaintiff appeals.

Affirmed.

*Halverson & Pratt,* of Ogden, for appellant.

*L. J. Holther* and *C. R. Hollingsworth,* both of Ogden, for respondent.

FRICK, J.

The plaintiff commenced this action in the district court of Weber county against the defendant to recover upon a promissory note. In its complaint plaintiff, in substance, alleged that in June, 1921, the "defendant subscribed for, and agreed to purchase, 50 shares of 7 per cent. preferred stock, each of the par value of $100;" that said stock was delivered to him, in consideration for which he executed and delivered to the plaintiff a promissory note for $5,000, payable $———— on a date named, and $1,000 on the 15th day of December, 1921, and an equal amount in each year thereafter until the whole $5,000 was fully paid, with 7 per cent. interest per annum. The note also contained various other provisions, among which, that in case the principal or interest should not be paid when due, the unpaid portion should bear 10 per cent. interest; that, in the event just stated, the holder of the note might declare the "entire principal" due and proceed to collect the same, and in that event could also collect 10 per cent. as an attorney's fee; that the stock purchased as aforesaid should be pledged to the plaintiff as security for the payment of said note. It was also alleged that the defendant had failed to pay said note, or any part thereof, except the sum of $265.60, by reason of which plaintiff has, exercised its right to declare the whole amount of said note due and payable, together with interest at the rate of 10 per cent. per annum; that plaintiff is also entitled to attorney fees in the sum of $500, for all of which it prayed judgment.

The defendant answered the complaint admitting the execution of the note sued on. In his answer, however, he pleaded the whole transaction, and, among other things, set up the written agreement between plaintiff and defendant for the purchase of said preferred stock. We shall hereafter refer to that agreement. The defendant also, with great particularity, set up the defense of fraud and misrepresentation,

which he alleged induced him to purchase said stock, and to execute and deliver the note sued on.

In view of the conclusions reached, and for the reasons hereinafter appearing, it is not necessary to here set forth the acts of fraud, etc., relied on as a defense.

The defendant also set up as a defense to the action that the plaintiff had failed to comply with what is known as the "Blue Sky Law," of this state, in that it had failed to obtain permission or a license from the State Securities Commission to sell said preferred stock.

Defendant also pleaded a counterclaim for the recovery back of said sum of $265.60, which he alleged he had paid plaintiff on said note.

Defendant therefore prayed that the note in question be declared void; that the same be canceled, and that he recover judgment for the amount last above stated, and that the plaintiff recover nothing in this action.

The case was tried to the court, which, at the conclusion of the trial, in substance, found as follows:

That in June, 1921, plaintiff was "engaged in soliciting through its agents subscriptions to its unsubscribed and unissued capital stock, which was divided into preferred and common; that on June 20, 1921, plaintiff solicited the defendant's subscription for 50 shares of its said preferred capital stock, and on said day, as the result of said solicitation, the defendant executed and delivered to the plaintiff an instrument in writing, in the words and figures following, to wit:

" 'Subscription Agreement.

" 'The Guaranty Mortgage Company. Incorporated under the Laws of the State of Utah. Capital Stock $500,000.

" 'I hereby agree with the Guaranty Mortgage Company of Utah to subscribe for fifty shares of 7. per cent. preferred stock of the said company, and agree to pay $100.00 per share (par value). Payments to be made as follows: Dec. 15, 1921, $1000.00, and a like amount on same dates each year thereafter until paid.

" 'This security is issued by permission of the Securities Commission of Utah, which does not endorse or recommend the purchase thereof.

" 'Dated this 20th day of June, 1921.

" 'Agent, Collins & Denson. Name, M. E. Wilcox.

" 'Make your remittance payable to the Guarantee Mortgage Company.' "

It is also found that, in consideration of the foregoing agreement, defendant executed and delivered the promissory note sued on, and that plaintiff on said day issued a certifi-. cate for said stock in the name of the defendant—

"and held the same as a pledge to secure the payment of said note as therein provided; that plaintiff, between May 6, 1921, and August 31, 1921, had no license from the State Securities Commission of the state of Utah authorizing or permitting it to sell, or offer for sale, shares of its preferred capital stock, or any part thereof, or to solicit subscriptions to its said capital stock; nevertheless, during said time the plaintiff had solicited and obtained subscriptions from other persons."

The next three paragraphs of the findings relate to the misrepresentation and fraud set up in defendant's answer, all of which are found against his contentions, and are of no importance, as will hereinafter appear.

The court, however, also found that on the 3d day of January, 1922, defendant had on deposit with the plaintiff the sum of $265.60, which it had applied as part payment of said note.

Pursuant to the foregoing findings, the court made the following conclusions of law:

"That on June 20, 1921, the plaintiff was an investment company within the meaning of chapter 17, Laws of Utah, passed at the special session of the Legislature held in 1919, as amended by chapter 131 of the Laws of Utah, 1921, and the transaction between the plaintiff and the defendant was a sale by the plaintiff to the defendant of its said shares of preferred capital stock; that by reason of the fact that plaintiff had not been authorized or licensed by the State Securities Commission of the state of Utah to so dispose of its capital stock, the contract of subscription entered into by the defendant, and the promissory note given by him to the plaintiff for said 50 shares of 7 per cent. preferred stock of the plaintiff were, and are, null and void; that said note should be surrendered to the defendant and canceled; that said Certificate No. 195 for 50 shares of the preferred capital stock of the plaintiff, so issued by the plaintiff to the defendant, should be surrendered to the plaintiff and canceled; that the defendant is entitled to judgment against the plaintiff for the sum of $265.60, with interest thereon at the rate of 8 .per cent. per annum from the 3d day of January, 1922, and defendant should recover his costs herein."

Judgment was entered accordingly, from which this appeal

is prosecuted by the plaintiff upon the judgment roll without a bill of exceptions.

The assignments of error assail the court's conclusion of law and judgment.

Plaintiff's appeal being upon the judgment roll, the defendant, without taking a cross-appeal, prepared, and the court settled and allowed, a bill of exceptions, in which are contained all of the evidence produced, and all of the proceedings had at the trial, and which bill he has filed in this court.

Defendant has assigned cross-errors, and to sustain the same relies upon the evidence and proceedings as they are made to appear from the bill of exceptions aforesaid.

Plaintiff's counsel have interposed a motion to strike the bill of exceptions, and also the assignment of cross-errors, upon the ground that plaintiff's appeal is based upon the judgment roll alone, and in view that defendant has not taken a cross-appeal; "that said bill of exceptions constituted no part of the record on appeal, and no alleged errors based thereon may be considered on this appeal."

The motion to strike the bill of exceptions, for the reasons urged by counsel, is manifestly without merit. Our statute (Comp. Laws Utah 1917, § 6969) authorizes any party to an action to prepare and have settled and allowed a bill of exceptions. The right is not limited to the party who appeals. As pointed out in *Railroad* v. *Board of Education,* 35 Utah, 13, 99 Pac. 263, our appellate procedure contemplates but one record on appeal which is transmitted to this court. True, a party may appeal upon the judgment roll alone, and may assign such errors as he may deem proper. If, however, the adversary party thinks that appellant's alleged errors are without merit, in view of all of the proceedings had at the trial, why may he not prepare, and have settled and allowed a bill of exceptions in which all of the facts and circumstances upon which the trial court acted, and upon which it based its judgment, are disclosed.

Our statute clearly states, and this court has so frequently held, that it has become elementary, that no judgment shall be reversed, unless upon the whole record it is made to appear that a substantial right of the complaining party has

been invaded or disregarded.. It might well be that, upon the judgment roll alone, error might be made apparent, which, from a consideration of all of the proceedings, it would, nevertheless, easily be made to appear that the alleged errors are entirely without merit.

Without pausing now to advance further argument against plaintiff's motion, it must suffice to say that we are clearly of the opinion that the motion to strike the bill of exceptions should be, and it accordingly is, denied.

We shall hereinafter refer to that part of the motion in which we are asked to strike the assignment of cross-errors.

Proceeding now to a consideration of the merits of plaintiff's appeal. Counsel in their brief state the question they seek to have determined thus:

"There is but one question involved on this appeal. Was it necessary for appellant to obtain from the State Securities Commission permission in the form of a license issued under the so-called 'Blue Sky Law,' before they could lawfully solicit or obtain subscriptions to its unissued and unsubscribed stock?"

Counsel further argue that the law referred to is not applicable to the transaction between plaintiff and defendant, which is here in question. They contend that the law does not apply to stock subscriptions.

The first question, therefore, is, what was the nature of the transaction between plaintiff and defendant? Was it a stock subscription in the sense that that term is generally used when parties enter into a mutual agreement to subscribe for, and take stock in, a proposed corporation which is to be organized, or was it a transaction in the nature of a purchase and sale of stock in an organized and going concern?

In determining the nature of the transaction, it is important to keep in mind that there is no dispute with respect to the facts that the plaintiff and defendant entered into the agreement hereinbefore set forth; that at the time that agreement was entered into the plaintiff was an investment company within the purview of the "Blue Sky Law"; that at that time plaintiff did not have permission or a license from the Securities Commission of this state to sell or dispose of its preferred stock, and that the transaction did not

fall within any of the exceptions of that law. It is also be-
yond dispute that plaintiff's original articles of incorpora-
tion were filed in October, 1918, with an authorized capital
stock of $85,000 divided into 20,000 shares of 8 per cent.
preferred stock of the par value of $3 each, and 25,000 shares
of common stock of the par value of $1 per share; that on
April 10, 1920, after the corporation had been fully organ-
ized, and the plaintiff had been carrying on an investment
business for about one year and a half, the articles of incor-
poration were amended so as to increase the preferred stock;
that the same was increased from $60,000 to $400,000—that
is, the preferred stock was actually increased to the extent of
$340,000, which was divided into 3,400 shares of the par
value of $100 each, which drew annual dividends of 7 per
cent., without possessing any voting power, however; that on
April 12, 1920, or within two days after the preferred stock
had been increased, plaintiff made application to the State
Securities Commission to sell said 3,400 shares of preferred
stock, and on May 6, 1920, the Commission granted plaintiff
permission and a license to sell said preferred stock; that
said license by its terms expired on May 5, 1921, while the
agreement between plaintiff and defendant here in question
was entered into on June 20, 1921, or about one and one-half
months after plaintiff's permission and license to sell stock
had expired. It is also beyond dispute that the plaintiff, in
making the application to the State Securities Commission
for permission to sell its preferred stock, stated that ''there
is mortgage security and real estate contracts back of every
share of preferred stock; that it is our intention to invest
our capital stock in these securities.'' As a reason for issuing
preferred stock, plaintiff also represented to the State Se-
curities Commission that the cause for issuing the preferred
stock was ''due to the rapid growth of our company and the
strong demands we have for loans, it makes it necessary for
us to increase our capital to one-half million (500,000), so
we herewith make application to your Commission for
permission to sell the additional capital stock''—that is, in-
creased preferred stock. Upon those representations permis-
sion to sell said stock was granted, and the plaintiff then ap-

pointed or employed agents to sell said preferred stock, some of which was sold to the defendant, in consideration for which the note here in question was executed and delivered by him.

In view of the foregoing, it seems very clear to our minds that the transaction between plaintiff and defendant constituted a purchase and sale of the preferred stock. The mere fact that it was called a subscription agreement is not controlling, nor can it alter the legal effect of the transaction. There is a clear distinction between an agreement to **3** subscribe for stock in a prospective corporation to be organized, and an agreement to purchase unsold and unissued stock of an organized corporation, which is a going concern, and which is putting its stock on the market to raise funds with which to enlarge its business. The courts have recognized that distinction. In *McDowell* v. *Lindsay,* 213 Pa. 591, 63 Atl. 130, the Supreme Court of Pennsylvania, in referring to that distinction, says:

"It seems to us that there is a distinction between a subscription agreement and a contract for the purchase of stock. Subscribers, as generally understood, are those, who, upon the formation of a corporation, agree mutually to take and pay for shares of the capital stock, and in the absence of any special provision, they agree with each other to pay therefor the par value of the stock."

The court then proceeds to show that the agreement to take stock after the corporation is organized and is a going concern ordinarily amounts to an outright purchase of the stock.

In *Bole* v. *Fulton,* 233 Pa. 609, 82 Atl. 947, in referring to the same subject, the court said:

"There is a well-recognized distinction between original subscriptions for stock in a corporation to be formed, and subscriptions for shares in an existing corporation. In the one case the engagement between the subscribers is created directly by the act of subscription, which, when once the corporation has been created by letters patent, issued on the strength of the subscription, becomes absolute, not subject to recall, and dischargeable only by actual payment. * * * In the other case the contract is not between the subscribers, except as it is shown that the subscriptions were mutual considerations for each other but between each individual subscriber and the corporation as it exists, and is sim-

ply a contract of purchase and sale. *Pittsburg & Connellsville R. R. Co.* v. *Byers*, 32 Pa. 22; *Weiss* v. *Mauch Chunk Iron Co.*, 58 Pa. 295."

The justice writing the opinion then quotes the distinction defined by Morawetz on Private Corporations, § 56. The distinction is also recognized in 1 Thompson on Corporations (2d Ed.) §§ 547-560.

In the case at bar the transaction in question was one entirely between the plaintiff corporation and the defendant, which, in our judgment, constituted a purchase and a sale of 50 shares of plaintiff's preferred stock. To the mind of the writer it would be utterly useless to attempt to make anything else out of the transaction, save a straight purchase and sale of the preferred stock. The case at bar, in principle, is not distinguishable from the case of *People* v. *Clum*, 213 Mich. 651, 182 N. W. 136, 15 L. R. A. 253. If, therefore, the transaction was one of purchase and sale, it clearly comes within both the letter and the spirit of our so-called "Blue Sky Law," which, so far as material here, provides:

" 'Investment Company' for the purpose of this act shall mean every person, firm, copartnership; trust, joint stock association, common-law company, foreign and domestic corporation, excepting those specifically exempted under section 2 of this act; that shall engage in the business within the state of Utah of selling or negotiating for the sale of any stock, bonds, units, investment contracts or other securities herein called 'securities' issued by said person, firm, copartnership, trust, joint stock association, common-law company, foreign and domestic corporation."

The "Blue Sky Law" also provides that all licenses shall expire at the end of the calendar year for which the same are issued, and further provides penalties for making sales without a license, and also declares all transactions made without a license unlawful and void. (See chapter 17, Special Laws Utah 1919, as amended by chapter 131, Laws Utah 1921.)

In this connection we desire to add here that we are not unmindful of counsel's contention that, in view of the very drastic penalties that are imposed by the law, and of the consequences that may be visited even upon innocent persons in case the provisions of the law are violated, the law should

receive a strict construction. The penalties are indeed drastic and the consequences harsh, but that, standing alone, does not authorize us to except transactions that are clearly within both the spirit and the letter of the law, as well as within the mischief the law was intended to meet. Nor have we overlooked the fact that a too liberal construction and application of the "Blue Sky Law" may defeat its own purpose, in that it may interfere with legitimate transactions, and may thus, through such undue interference, become harmful, rather than a shield to protect the unwary from fraudulent stock transactions, as well as from transactions in unsecured bonds, securities, etc., as is manifestly the purpose of the law. In view, however, that the validity of the law is not assailed, and the transaction here in question comes squarely within the terms of the law, we have no alternative save to enforce the law as written.

In view of the findings of the court, and the undisputed facts hereinbefore referred to, the district court's conclusions of law are unassailable and must prevail.

This brings us to the defendant's assignment of cross-errors. As hereinbefore stated, plaintiff has filed a motion to strike the assignment of cross-errors upon the ground that the defendant, having failed to take a cross-appeal, cannot assign cross-errors. The purpose of assignment of cross-errors, and what may be reviewed upon such an assignment without taking a cross-appeal, is fully explained in the recent case of *Fowers* v. *Lawson*, 56 Utah, 420, 191 Pac. 227, and a repetition here of the reasons there stated is wholly unnecessary. It is clear from what is there said, that an assignment of cross-errors cannot be stricken merely because no cross-appeal has been taken. While it may be that the cross-errors assigned, or some of them, may present nothing for this court to consider, yet that is no reason why the assignment should be stricken. A very large percentage of the errors assigned—indeed, a majority of them—in this court are not, and, in view of the state of the records, cannot be, considered by us, yet that affords no ground for striking the assignments. The motion to strike the assignment of cross-errors must therefore fail. In view, however, that the judg-

ment must be affirmed upon the grounds hereinbefore stated, nothing could be gained by considering defendant's assignment of cross-errors. Indeed, if we attempted to do so, what we might say in that regard would be mere obiter. We therefore refrain from discussing the cross-errors assigned.

The defendant filed an additional printed abstract, nearly all of which was unnecessary to a consideration of plaintiff's appeal; and in view that defendant did not take a cross-appeal, and that the case is affirmed on plaintiff's appeal, we are of the opinion that the defendant should be permitted to tax against the plaintiff only 25 pages of his original brief, and all of his supplemental brief; that the defendant should be taxed with the cost of printing the additional abstract and the remaining pages of his original brief, except the first 25 pages as aforesaid, and in view that only a portion of the evidence contained in the bill of exceptions was necessary to defendant's case, the cost of obtaining the bill of exceptions should be equally divided between the parties. All other costs should be taxed to plaintiff.

The judgment is therefore affirmed, costs to be divided and taxed as above.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.


GIDEON, J.


The appeal in this case is upon the judgment roll. This court, rightly in my opinion, has affirmed the judgment based upon the findings of the trial court. Those findings are a part of the judgment roll. No part of the bill of exceptions is necessary for a consideration of the errors assigned by appellant. Respondent has settled a bill of exceptions containing a mass of testimony, and assigned cross-errors based upon the failure of the district court to find the issue of fraud in his favor. The findings of the court were against him on this issue, and the findings in my judgment reflect the great weight of the testimony. The defendant asked to be, and is, relieved by the judgment of the court from the obligations

of a contract that was fully understood when made; a contract entered into on his part without any false or fraudulent representations on the part of appellant or its agents. He is so relieved by the express provisions of the statute making the sale of stock of the character herein involved void, if made without a license from the State Securities Commission. No part of the cost of the bill of exceptions should be taxed against the appellant, and only such part of the respondent's brief as relates to, or discusses, the issues presented by appellant's assignment of errors.