HOLLOWAY ET AL. *v.* THOMPSON ET AL.

[No. 16,807.   Filed June 16, 1942.   Rehearing denied October 21, 1942.]

230

*Todd & McCormack* and *Harvey D. Trimble,* all of Indianapolis, for appellants.

*L. Russell Newgent,* of Indianapolis, and *Scifres & Hollingsworth,* of Lebanon, for appellees.

FLANAGAN, C. J.—Appellees brought this action against appellants by a complaint in four paragraphs.

Each paragraph alleges the following facts:

In February, 1938, appellant, Alice G. Holloway, with others, organized the Fall Creek Cemtery Association, Inc., appellant herein, for the purpose of developing into a cemetery certain real estate in Indianapolis owned by her and then conveyed to said corporation. Appellant Alice G. Holloway was secretary of said corporation. The cemetery was to be known as Sutherland Park Cemetery. About the same time appellants engaged one

Lee Barker, one Eddleson and one M. Clark to sell the cemetery lots, prepared literature for their use and established an office for them to use under the name of Sutherland Park Sales Company. They authorized said Sutherland Park Sales Company to solicit and offer to buy bonds and securities from the public, convert the same into cash and pay appellants part thereof for the cemetery lots. Appellants accepted the proceeds from such transactions in payment for such lots knowing the nature of the transactions. The literature contained false representations that the project was a "civic enterprise," that purchasers would "reap handsome profits," that numerous improvements were to be made including a new building, and also contained pictures of tombstones and monuments in the cemetery which did not in fact exist. Appellees, who are husband and wife, were 80 and 76 years of age respectively, were wholly unacquainted with Marion County property, lived in Delphi, Indiana, and were infirm and unable to travel alone to Indianapolis. About February 15, 1938, Eddleson called upon appellees at their home in Delphi, made the representations contained in the literature as above set forth, and made the further representations that if appellees would endorse and surrender to him certain stocks which they owned and which were of the market value of about $1,500, he would pay them $2,800 therefor by giving them $150 in ten days and $2,650 with interest at 6 per cent at the end of one year. Appellees were to receive a deed for certain of the Sutherland Park Cemetery lots which they would hold for a year and then surrender upon receiving the $2,650. The money obtained from the sale of their stock, they were told by Eddleson, was to be used in developing the cemetery and they were assured by him that the investment was safe and if

they needed any money before the end of the year he would advance it to them. Appellees endorsed and delivered their stock to Eddleson and he sold it and paid part of the proceeds to appellants for which they executed a deed to appellees for four and one-half lots with burial space for 31 bodies. The deed and $150 cash was delivered to appellees but they received nothing more. Neither of appellants, nor the Sutherland Sales Company, nor any of its officers or agents, including Eddleson, were registered under the Indiana Securities Act, § 25-830 to 853, Burns' 1933 (Supp.), as dealers or agents. All the representations were false and were relied upon by appellees.

The first paragraph contains in addition to the above facts allegations that in April, 1938, appellant Holloway and Sidney L. Aughinbaugh, who was vice-president of appellant Fall Creek Cemetery Association, Inc., called upon appellees in their home in Delphi, inquired why appellees had not been to Indianapolis to see the cemetery and when informed that Eddleson was to take them there but had not done so, said "Yes, we sometimes do that." Appellees then informed their visitors of the representations made to them and were told that Eddleson wold no doubt pay them the balance which he had promised to pay them.

Paragraph two contained the additional allegation that Eddleson at the time of the transaction with appellees was the agent of appellants acting within the scope of his authority.

Paragraph three contained the additional allegation that appellees' loss was the proximate result of appellants' bringing to Indianapolis, Eddleson and the others to sell the cemetery lots on any method they might adopt.

Paragraph four contained the additional allegation

that the transaction resulted from a conspiracy on the part of appellants, Eddleson and his associates, to defraud appellees and the public generally.

Each paragraph alleges rescission and demands damages including attorney fees.

A motion to strike parts of the complaint, and a several demurrer to each paragraph thereof were each overruled. Appellants answered in general denial and the cause was submitted to a jury which returned a verdict for appellees assessing damages in the sum of $1,400 plus $500 attorney fees. Appellants' motion for judgment notwithstanding the verdict, and motion for a new trial were each overruled and judgment entered on the verdict.

Appellants assign as error: (1) Overruling their motion to strike parts of the complaint; (2) overruling their demurrer; (3) overruling their motion for judgment notwithstanding the verdict; and (4) overruling their motion for a new trial.

The first alleged error is the overruling of appellants' motion to strike parts of the complaint. A motion to strike parts of a complaint is addressed to the sound discretion of the trial court. *King* v. *Ransburg* (1942), 111 Ind. App. 523, 39 N. E. (2d) 822.

Appellants have failed to point out, and we do not discover, wherein the trial court abused its discretion or wherein appellants were harmed by the overruling of their motion to strike parts of the complaint.

The first question presented by appellants' demurrer is whether the complaint alleges such violation of the Indiana Securities Act as to give appellees a cause of action under § 25-847, Burns' 1933 (Supp.), which reads as follows:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every officer, director or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section: Provided, That no action shall be brought for the recovery of the purchase-price after two [2] years from the date of such sale or contract for sale: And provided, further, That no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within a reasonable time to accept the voluntary offer of the seller to take back the security in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"(a) In case such securities consist of interest-bearing obligations at the same rate as provided in such obligations; and

"(b) In case such securities consist of other than interest-bearing obligations at the rate of six [6] per cent per annum; less in every case the amount of any income from said securities that may have been received by such purchaser."

Subsection (c) of § 25-831, Burns' 1933 (Supp.), reads as follows:

"The terms 'sale,' 'sell,' 'offer to sell,' or 'offer for sale,' shall include every sale, resale or disposition of, attempt or offer or solicitation to dispose of, or solicitation of an offer to buy, or promotion, repromotion, or promotional distribution of, a security or interest in a security, for value; and shall include an exchange, an option of sale, a subscrip-

tion or an offer to sell or to invite offers for or inquiries about securities by personal solicitations, directly or by telephone, or by an agent or by letter, circular, radio, advertisement or otherwise; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter. Any security given or delivered with or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value."

The Indiana Securities Act provides that no securities, except certain exempted classes not here involved, shall be sold within this state unless and until registered by qualification under the act. It also provides that no dealer or agent shall sell any securities until such dealer or agent is duly registered under the act, and the issuer of securities who sells them in this State is included in the term "dealer."

It follows that if appellants were engaged in issuing and selling securities in this State without complying with the act either by registering the securities or registering as a dealer they were violating the act. It seems also clear that if appellees engaged others not registered as dealers or agents to dispose of securities in this State, or engaged others to dispose of unregistered securities they would be violating the act.

Our courts hold that when two or more persons combine either to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means there is a conspiracy, *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877; *Hamilton* v. *Cooley* (1934), 99 Ind. App. 1, 184 N. E. 568; *Wade* v. *Culp* (1940), 107 Ind. App. 503, 23 N. E. (2d) 615; and each engaged in the conspiracy is liable for the acts and declarations of the others done

and made in furtherance of the conspiracy. *Mendenhall* v. *Stewart* (1897), 18 Ind. App. 262, 47 N. E. 943; *Boaz* v. *Tate* (1873), 43 Ind. 60.

The Indiana Securities Act, § 25-847, Burns' 1933 (Supp.), makes every officer, director or agent of a seller who shall have participated or aided in any way in making a sale in violation of any of the provisions of the act, jointly and severally liable to the purchaser.

Under the facts alleged in the complaint as above set forth, if the sale of the cemetery lots was under the circumstances a sale of securities, it follows that appellants are liable to appellees under § 25-847, Burns' 1933 (Supp.), of the Securities Act.

A security is defined by the Act, § 25-831, Burns' 1933 (Supp.), as follows:

"The term 'security' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, interest or certificate of interest or participation in any profit sharing agreement, collateral trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting trust certificate, certificate of deposit for a security, income contract, annuity contract unless issued by an insurance company qualified with the insurance department of this state, subscription or contract covering or pertaining to the sale or purchase of securities on the instalment plan, any form of contract or agreement for the sale and conveyance of land or interest therein lying outside of this state on the deferred payment or instalment plan, when such contract does not contemplate delivery of possession of such land to the purchaser within three [3] months after the date of such contract, beneficial interest in a trust or pretended trust, any transferable certificate, instrument, or receipt evidencing an interest in or right to specific property, beneficial interest in title to property, profits or earnings, certificate of interest in an oil, gas or mining lease,

royalty or title, or, in general, any interest or instrument commonly known as a 'security' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of or warrant or right to subscribe to or purchase, any of the foregoing."

The word "security" is ordinarily used as a synonym for "investment." It has no exactly defined legal definition. To determine whether an instrument is a security, it must be examined in the light of the purposes to be accomplished by its issuance and all surrounding circumstances.

Justice Treanor speaking for the United States Circuit Court of Appeals, Seventh Circuit, in *Securities and Exchange Com'n* v. *Universal Serv. Ass'n.* (1939), 106 F. (2d) 232, 237, in discussing the meaning of the word "security" as used in the Federal Act, 48 Stat. 74, 15 U. S. C. A., Section 77a et seq., used the following language:

"But decisions uniformly hold that in determining whether a particular instrument is a security within the meaning of the act the substance of the transaction and of the relationship between the alleged issuer and alleged security holder will control as against the form of the alleged security. In *Securities and Exchange Commission* v. *Crude Oil Corporation*, this Court held that the instrument purporting to evidence a sale of a commodity constituted a security; and in that case this Court referred to numerous contracts of widely varying content which had been held under state laws to be securities, and listed many of them.

"One of the recognized purposes of the Securities Act is to compel full disclosure of the truth, and the form of arrangements or transactions whether they be styled sales of commodities, agencies, leases, applications, endowments or by any other name must be tested by the rule of substance. It is true that when Congress attaches consequences to form, such as the precise wording of an instrument,

or the corporate device for tax purposes, the courts may not regard substance as controlling. But in this case we are controlled by an act of Congress which is intended to prevent overreaching and to mandate 'fair disclosure'; and the Congressional expressions relating to 'securities' are so broad and all-inclusive that we must recognize that the Congressional intention is to give effect to substance and not to form.

"Plaintiff has suggested as a definition of the general term 'security' the following: 'The investment of money with the expectation of profit through the efforts of other persons.' Such definition has support in state decisions and describes a relationship which is in substance that of a security investor."

Our statute includes in its definition of security, "any interest or instrument commonly known as a security" and is broad enough we think to include any ■ form of instrument used for the purpose of financing and promoting enterprises and which is designed for investment.

In the case at bar, according to the allegations of the complaint, we do not have the sale of burial lots for burial purpose. The entire scheme so far as the engaging of Barker, Eddleson, etc., was concerned, was the disposal of blocks of units to investors for investment and speculation on their part and for financing and promoting as far as appellants were concerned.

The owner of a cemetery lot is in a somewhat different position than the owner of an ordinary parcel of real estate. As our Supreme Court said in the case ■ of *Paul* v. *Walkerton, etc., Cemetery Assn.* (1933), 204 Ind. 693, 184 N. E. 537, his relation to the corporation having supervision over the cemetery is in many respects that of corporation and stockholder, the interest of the stockholder being represented by lots instead of stock. See also *Certia* v. *University*

*of Notre Dame Du Lac* (1925), 82 Ind. App. 542, 141 N. E. 318; and 10 Am. Jur., Cemeteries, § 22, p. 503; 14 C. J. S. Cemeteries, § 25, p. 84.

In the case of *In re Waldstein* (1936), 291 N. Y. S. 697, the Supreme Court of New York examined a situation quite similar to the one here presented. The sales scheme was practically the same. The document issued to the purchaser was a certificate or deed granting right of burial. Because the circumstances clearly disclosed that the sales were for investment and promotion that court held that securities were being issued under a New York statute giving the Attorney General the right to investigate sales of securities within that state.

In the case at bar, the literature furnished by appellants described promotional work to be done, called their development a "civic enterprise" and stated that purchasers would "reap handsome profits." A sales organization was formed, an office procured and a sales force was engaged to dispose of the lots by soliciting and offering to buy bonds and securities from the public to be converted into cash to pay for lots. We think this was the sale of securities under the Indiana Securities Act and failure to comply with the Act made appellants liable and gave appellees the benefit of the provisions of § 25-847, Burns' 1933 (Supp.), against both apellants.

Each paragraph of complaint states a good cause of action and no error was committed in overruling appellants' demurrers.

We have carefully examined appellants' motion for judgment notwithstanding the verdict and their motion for a new trial. The errors claimed thereunder are based upon appellants' theory that the sale of the lots did not constitute the sale of securities, that there was no violation of the Securities Act, and that appellees

were therefore bound to show actionable fraud by agents of appellants or appellants' participation in a conspiracy to defraud, and the same legal propositions are presented that we have considered on the rulings on the demurrers. We find no harmful error in the giving or refusal of instructions nor in the rulings on admission of evidence. There is ample evidence to sustain the allegations of the complaint and in view of our conclusion that the sale of the lots under the circumstances was a sale of securities, that their sale, either without registration as an issue of securities or through unregistered dealers or agents, was unlawful and made appellants liable as conspirators, we find no error in overruling appellants' motion for judgment notwithstanding the verdict or in overruling appellants' motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 42 N. E. (2d) 421.