## STATE v. HERBERT W. LORENTZ.[1]

March 22, 1946.

No. 34,089.

*Frank J. Collins,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston* and *Ralph A. Stone,* Assistant Attorneys General, and *Roy A. Hendrickson,* County Attorney, for the State.

MAGNEY, JUSTICE.

Defendant, convicted of violation of the so-called blue sky law by selling unregistered securities, appeals from an order denying his motion for a new trial.

In the information defendant was charged with selling unregistered securities to one Andrew Larson and other persons in the course of repeated and successive sales. These claimed unregistered securities consisted of contracts and deeds to burial lots in a cemetery located near the city of Willmar known as Clover Leaf Memorial Park. It is conceded that no application for registration was made. Defendant contends that the instruments in question were not securities and that therefore registration was not required.

[1]Reported in 22 N. W. (2d) 313.

The applicable sections of the blue sky law are Minn. St. 1941, § 80.01, subd. 4 (Mason St. 1941 Supp. § 3996-1[3]), which provides:

" 'Security' means and includes any stock, share, bond, note, debenture, commercial paper, evidence of indebtedness, investment contract, interest in or under a profit-sharing or participating agreement or scheme, or beneficial interest in a trust or pretended trust. Any interest in any security shall be deemed a security."

and § 80.07 (Mason St. 1941 Supp. § 3996-4), which provides:

"No securities shall be sold within the state except in accordance with a registration thereof then in effect."

The contracts for deed here involved, after describing the premises and the consideration, contain the following provisions:

"A perpetual care, maintenance and improvement fund shall be created by setting aside ten percent (10%) of all lots sold and deeded for the perpetual care, maintenance and improvement of said park. The amount so set aside shall be placed in trust by Clover Leaf Memorial Park (owners and developers of Clover Leaf Memorial Park) to be used for the perpetual care, maintenance and improvement of said Clover Leaf Memorial Park.

"And the said party of the first part agrees and binds itself to convey the said lot, or lots, free of all liens, to the said party of the second part when all the described payments have been made by the said party of the second part, for burial purposes only, and subject to the rules and regulations and provisions, now or hereafter made, governing said burial park.

"To preserve the park-like aspects of the grounds, no private mausoleum, monuments nor tombstones of any kind or description will be permitted and no plots shall be filled above the established grade. Bronze memorial epitaph plaques will be allowed and such may be purchased through and placed by the Clover Leaf Memorial Park, in order to insure quality and uniformity.

\* \* \* \* \*

"This contract is subject to the rules and regulations and by-laws of the Clover Leaf Memorial Park, (owners and developers of Clover Leaf Memorial Park).

＊　＊　＊　＊　＊

"This burial park is for the exclusive use of members of the Caucasian race."

In the deeds given, the following provision is found:

"This deed is given with the express condition that said above described real estate be used for burial purposes of persons of the Caucasian Race only, and subject to all the rules, regulations, perpetual care and provisions now or hereafter made governing said Clover Leaf Memorial Park Cemetery, ＊ ＊ ＊."

■ Andrew Larson purchased 18 lots platted for 104 graves at a cost of $2,600, his son having a one-half interest in a few of them. Reuben Felt purchased four six-grave lots, and Albin Newman three four-grave lots and two six-grave lots. Dr. F. N. Solsem invested at least $5,300 in lots. There were other purchasers.

The state contends that these contracts and deeds are investment contracts, and, since they were not registered, that defendant is guilty of the offense of selling unregistered securities. No question of fraud is involved. Defendant's position is that these contracts for deed and deeds are ordinary contracts and deeds and that there is nothing in them that would bring these instruments within the provisions of the blue sky law. The question for us to determine is whether the sale of these cemetery lots under the circumstances here disclosed was the sale of unregistered securities ("investment contracts") within the meaning of the statutes.

It is evident from the number of burial lots sold to different purchasers that they were not sold or purchased primarily for burial purposes of the buyer or his family. For instance, it cannot be successfully contended that Andrew Larson could use the hundred or more lots he purchased for their only permissible use, namely, burial purposes. The same, of course, must be said of Dr. Solsem. It is clear that the lots were not purchased primarily for such purposes. They were purchased for resale.

In State v. Gopher Tire & Rubber Co. 146 Minn. 52, 177 N. W. 937, a corporation issued and sold certificates which provided that,

in consideration of a sum paid by the purchaser and of his assistance in promoting the sale of goods manufactured by the corporation, he would share in the profits. The court held that the corporation was engaged in the business of selling securities within the meaning of the blue sky law and that the placing of capital or laying out of money in a way intended to secure income or profit from its employment was an investment and the certificates issued by defendant were investment contracts. The court said (146 Minn. 56, 177 N. W. 938):

"* * * To lay down a hard and fast rule by which to determine whether that which is offered to a prospective investor is such a security as may not be sold without a license would be to aid the unscrupulous in circumventing the law. It is better to determine in each instance whether a security is in fact of such a character as fairly to fall within the scope of the statute."

The court continued (146 Minn. 56, 177 N. W. 938):

"* * * If defendant issued and sold its certificates to purchasers who paid their money, justly expecting to receive an income or profit from the investment, it would seem that the statute should apply. The statute makes specific mention of stock which, properly speaking, is not a security, and follows the enumeration of investments which fall within its scope with the words, 'herein called securities,' indicating that the legislature has not used the term 'securities' in a literal but in a broad sense."

This rule was restated and followed in State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165.

The term "investment contract" is nowhere defined in the act as was stated in State v. Evans, *supra*. It could not very well be. The statute is liberally construed to effectuate its purpose. In State v. Hofacre, 206 Minn. 167, 288 N. W. 13, it is suggested by the court that a narrow construction should not be placed on such laws. The following Minnesota cases also involve contracts which the court held required registration: State v. Summerland, 150 Minn. 266, 185 N. W. 255; State v. Ogden, 154 Minn. 425, 191

N. W. 916; Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904, 54 A. L. R. 495; State v. Swenson, 172 Minn. 277, 215 N. W. 177, 54 A. L. R. 490.

In 47 Am. Jur., Securities Acts, § 16, it is stated:

"* * * As to the scope and application of so-called 'blue sky laws' with respect to instruments not covered by express statutory definition, it has been said that to lay down a hard and fast rule by which to determine whether that which is offered to a prospective investor is such a security as may not be sold without registration or official sanction would be to aid the unscrupulous in circumventing the law, and that it is better to determine in each instance whether a security is in fact of such a character as fairly to fall within the scope of the statute. Speculative securities include those the value of which materially depends on proposed or promised future promotion or development, rather than on present tangible assets or conditions. The term 'investment contract,' as used in a 'blue sky law,' has been defined as a contract providing for the investment of capital in a way intended to secure income or profit from its employment."

Although the instruments or deeds here use the words "grant, bargain, and convey and warrant," the same as in ordinary deeds of conveyance, the grantee can use the land purchased for burial purposes only. The rights in the lot are limited and circumscribed. It is not an ordinary sale of real estate. It is not necessary here to determine the technical rights that a purchaser of a burial lot acquires. However, in 10 Am. Jur., Cemeteries, § 22, it is stated:

"The sentiment of all civilized peoples regards the resting place of the dead as hallowed ground, and requires that in some respects it be not treated as subject to the laws of ordinary property. It follows that an interest in a burial lot is of a somewhat peculiar nature. As a general rule, one who purchases and has conveyed to him a lot in a public cemetery does not acquire the fee to the soil, but only a right of burial therein, which has been variously designated as an easement or as a license or privilege. The right of the

purchaser, however, does not depend upon the existence of a dominant estate. It resembles, in some respects, the right of a church pew tenant. The rule that the purchaser does not acquire a title in fee has been applied to conveyances of lots in private cemeteries, which employ, the ordinary language of a fee simple deed, but include terms limiting the use to the burial of the dead, and impose various conditions, regulations, and restrictions; but the contrary view that a purchaser of a lot from a cemetery company is vested with an estate in the lot in fee, though with restrictions as to alienation and use, and that he has more than a mere license or easement, has also been taken. * * * The right of the owner of a burial lot is not confined to the limits of his lot; he has an interest in the entire cemetery to the extent, at least, that the cemetery corporation is under a duty to execute a trust in maintaining the grounds as a cemetery perpetually, or until it is relieved of this obligation through the action of the court or public authorities in discontinuing the cemetery."

In Holloway v. Thompson, 112 Ind. App. 229, 239, 42 N. E. (2d) 421, 425, the court held that the securities act, including in its definition of security "any interest or instrument commonly known as a security," is broad enough to include any form of instrument used for the purpose of financing and promoting enterprises and which is designed for investments, such as the disposal of blocks or units of lots in a cemetery development for the purpose of investment and speculation on the part of investors and promotion on the part of promoters. And in State v. Cushing, 137 Me. 112, 15 A. (2d) 740, an indictment was held valid which charged the defendant with violation of the blue sky law in the sale of burial lots. The blue sky law statutes in Indiana and Maine differ from the provisions of the Minnesota statute, but the emphasis of illegality is placed upon the sale of burial lots for speculative purposes. See, also, Matter of Waldstein, 160 Misc. 763, 291 N. Y. S. 697.

In Securities and Exchange Comm. v. C. M. Joiner Leasing Corp. 320 U. S. 344, 64 S. Ct. 120, 88 L. ed. 88, the question decided was whether certain oil leases and assignments were within the terms

of "investment contracts" and "any interest or instrument commonly known as a 'security,'" and therefore "securities" within the meaning of the Federal Securities Act of 1933, § 2(1), 15 USCA, § 77b(1). The court held that the transactions were not simply sales and assignments of interests in land, but by the nature of the offers were within the terms "investment securities" and "any interest or instrument commonly known as a 'security.'" In the course of the opinion the court said (320 U. S. 352, 64 S. Ct. 124, 88 L. ed. 94) :

"Nor can we agree with the court below that defendants' offerings were beyond the scope of the Act because they offered leases and assignments which under Texas law conveyed interests in real estate. In applying acts of this general purpose, the courts have not been guided by the nature of the assets back of a particular document or offering. The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect. In the enforcement of an act such as this it is not inappropriate that promoters' offerings be judged as being what they were represented to be."

In a footnote on the same page the court said:

"One's cemetery lot is not ordinarily thought of as an investment and is most certainly real estate. But when such interests become the subjects of speculation in connection with the cemetery enterprise, courts have held conveyances of these lots to be securities. Matter of Waldstein, 160 Misc. 763, 291 N. Y. S. 697; Holloway v. Thompson [112 Ind. App. 229], 42 N. E. 2d 421."

The court continues (320 U. S. 355, 64 S. Ct. 125, 88 L. ed. 95) :

"In the present case we do nothing to the words of the Act; we merely accept them. It would be necessary in any case for any kind of relief to prove that documents being sold were securities under the Act. In some cases it might be done by proving the document itself, which on its face would be a note, a bond, or a

share of stock. In others proof must go outside the instrument itself as we do here."

At 320 U. S. 351, 64 S. Ct. 124-5, 88 L. ed. 93, the court said:

"* * * the reach of the Act does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,' or as 'any interest or instrument commonly known as a "security." ' "

This case seems to cover our situation fully.

■ Defendant, in his direct examination, frankly admitted that the burial lots were sold for speculative purposes and that he told prospective buyers that a good profit could be made on their resale. He admitted comparing this speculation with investments in bonds. Since defendant on his direct examination testified that he told prospective buyers, as an inducement for purchase, that the lots had large speculative values, his complaint now that the court erred in receiving oral testimony by the state's witnesses along the same line need not be taken seriously. As a matter of fact, such evidence is clearly admissible to show the true nature of the transaction and the contracts and deeds. Securities and Exchange Comm. v. C. M. Joiner Leasing Corp. 320 U. S. 344, 64 S. Ct. 120, 88 L. ed. 88, *supra*. Such evidence does not tend to vary the terms of written instruments. Here, the burial lots were sold as a commercial enterprise—for purposes of speculation. The fact that the instruments involved are in the form of deeds and contracts for deed is immaterial. The value of the property represented by the deeds and contracts for deed depended in this case on the promised future development and beautification of the cemetery, not so much on the present tangible assets. Where burial lots are sold in the usual course for burial purposes, the statute of course does not apply.

Judging defendant's transactions as being what they were repre-
sented by him to be, he was selling investment contracts. He sold
burial lots, not for burial purposes only, but primarily for specula-
tion, and the contracts and deeds required registration. In our
opinion, they fall within the scope of the statute.

Order affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the legislature did not intend that the
term "investment contract" as set forth in Minn. St. 1941, § 80.01
(Mason St. 1927, § 3996-1), should extend to and include contracts
for the sale of real estate in individual lots, whether for cemetery
purposes or for residential purposes in a platted and dedicated city
addition. If the legislature intended otherwise, it would have so
expressed itself and not left it to individual speculation to deter-
mine whether the sale of cemetery lots, either outright or by con-
tract for deed, such as is here involved, constituted the sale of
"investment contracts" resulting in violation of the act if such
sales were not first registered thereunder.

I do not feel that State v. Gopher Tire & Rubber Co. 146 Minn.
52, 177 N. W. 937, and like cases are applicable to the situation
here presented. In the Gopher Tire & Rubber Co. case, we held
that the sale of a "certificate" entitling the purchaser to *participate
in the profits of a corporation* constituted an "investment contract"
under the act. In the instant case, there is involved merely the
sale of lots under contracts for deed, and the purchaser, after pay-
ment of the purchase price and delivery of the deed, is vested with
title to the real estate so sold. Any expectation of profit does
not relate to his participation in the profits of the cemetery associ-
ation as such, but rather to the general rise in the value of his
real estate independent of the association and unrelated thereto.

The fact that the seller of such lots agrees to set aside ten percent
of the proceeds of all sales for maintenance and improvement of the
cemetery, in my mind, does not distinguish such sales from the
sale of lots in newly platted additions wherein the deeds contain
covenants that the grantors shall maintain water supply or sewage

systems or other like projects. See, Country Club D. S. Co. v. Village of Edina, 214 Minn. 26, 8 N. W. (2d) 321. The sale of lots in such an addition beyond the immediate residential requirements of the purchaser, in the hope that such purchase may lead to future profits, can scarcely be held to subject all sales in the addition to the requirements of the act. Nor does the fact that in the instant case the contracts for deed contained certain restrictions as to use or subsequent sales differentiate such sales from the sale of residential lots in city additions such as above described, where like restrictive provisions are set forth in the deeds thereto, particularly insofar as use of the property, building requirements thereon, and subsequent sales thereof are concerned.

As stated in State v. Ogden, 154 Minn. 425, 427, 191 N. W. 916, 917:

"* * * The purpose [of the sale] was not to convey undivided interests in the land. The purchasers did not intend to become freeholders or landowners. * * * the unit holders were to participate in profits in proportion to their holdings and were to be interested in the same proportion in the corporation holding the title and operating. * * * *The paternalistic purpose of the statute is to prevent offering to the public, not land contracts, but investment contracts, evidencing a right to participate in the proceeds of a venture,* without the commission first ascertaining whether there is behind the venture something so tangible that a sound policy of regulation permits exposing the investing public to them. This is an investment contract within the statute." (Italics supplied.)

In the instant case, there are involved land contracts which do not evidence a right of the purchasers thereof to participate in the proceeds of the venture, or in the profits of the association, or to a beneficial interest therein, and, in consequence, under the above definition, it would seem that such contracts are not subject to the terms and provisions of the act.

There is no claim that defendant here was guilty of fraud. The cemetery is now being maintained in accordance with all the

covenants set forth in the conveyances. None of the purchasers have resold their lots or offered to do so. Apparently they still feel that their purchases are good and that ultimately they will gain therefrom. Defendant is an ex-serviceman with an honorable overseas record in World War I. He has been active in service organizations and has at no time been involved in any violations of the law. In justice to him it would seem that before he be held guilty of a criminal act in the sale of these lots the language of the securities act should have clearly and definitely set forth that the sale of cemetery lots fell within the classification of "investment contracts" and hence constituted a violation of the provisions of the act.