300 P.2d 628

**MEMORIAL GARDENS OF THE VALLEY, Inc., a corporation, Plaintiff and Appellant,**

**v.**

**M. H. LOVE, Director, Securities Commission of the State of Utah, and Hal S. Bennett, Donald Hacking, Stewart M. Hanson, Commissioners, Defendants and Respondents,**

**Funeral Directors and Embalmers Association of Utah, a corporation, Intervener.**

No. 8468.

Supreme Court of Utah.
July 9, 1956.

Van Cott, Bagley, Cornwall & McCarthy, David E. Salisbury, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., H. R. Waldo, Jr., Keith R. Bean, Asst. Attys. Gen., for respondent.

C. N. Ottosen, Salt Lake City, for intervener.

CROCKETT, Justice.

Memorial Gardens, Inc. owns a 71.5-acre parcel of land in Salt Lake County, Utah which it has dedicated as a cemetery and is engaged in the development, operation and sale of lots therein. M. H. Love, Director of the Securities Commission ruled that it was subject to regulation under the Securities Act.[1] Plaintiff brought this action for a declaratory judgment that it was not subject thereto. The District Court refused to so rule; plaintiff appeals.

The sole issue is whether the sale of burial lots in accordance with plaintiff's plan is a sale of "securities" within the provisions of section 61–1–4 U.C.A.1953:

"(1) 'Security' shall include any note, stock, * * * bond, debenture or evidence of indebtedness; * * * certificate of, contract for, or any conveyance or other instrument conveying, * * * or purporting to convey or represent, an interest or any right in, * * * any oil, gas or mining lease or permit; collateral trust certificate, preorganization certificate, or preorganization subscription; any transferable share, investment contract, service certificate, burial certificate or burial contract; investment-trust certificates, shares or units, or beneficial interest in or title to property, profits or earnings; certificate of membership in, contract or agreement * * * issued by, any corporation, association * * wherein a discount, reduction in price or other advantage, privilege or right in or to the purchase of merchandise are * * * agreed to be given or made; and any other instrument com-

1. 61–1 U.C.A.1953.

monly known as a security, including any plan or scheme wherein townsites, town lots, or acreage, or any other land division in fee or in leasehold shall be used in connection with the gift or sale of any security as herein defined."

The facts were stipulated: lots in plaintiff's cemetery are sold on time payment contracts which specify a price for the lot and a contribution to a trust fund committed to perpetual care and maintenance. Plaintiff agrees to give a deed of conveyance with the use limited to burial purposes; to design and construct burial gardens; and agrees to provide for perpetual care and maintenance out of the income from the trust fund. As a sales inducement its salesmen represent that lots now acquired will increase in value as the cemetery is developed. In the initial agreement the buyer is requested to sign a statement that he is buying it for burial purposes only and not for resale or for speculation. The final contract contains no such statement, and lots may be transferred by the purchaser so long as the sale is registered with the secretary of the company.

The rule that the penal nature of Securities Acts, sometimes referred to as "Blue Sky Laws," requires their provisions to be strictly construed, and that coverage shall not be extended by implication, has been recognized in this state in former times.[2] We are aware, however, of respectable authorities to the contrary,[3] which latter authorities reason that instead of the rule above referred to, the sounder view is that the statute should be liberally construed to effectuate its purposes. We recognize that this approach has considerable merit and casts doubt upon the validity of the rule of strict construction.[4] However, as will later appear herein, we deem it unnecessary to a solution of the instant problem to concern ourselves with the correctness of that rule or its application here, because our analysis of this situation leads us to the conclusion that the plaintiff's activities are not covered by the Securities Act, and this would be so even under a liberal construction.

■ Defendants' argument is that the words "burial certificate" and "burial contract" used in the statute, and particularly read in connection with the preceding general terms, "any transferable share, investment contract, service certificate," include the contract and deed to be issued for the cemetery lots here. Supplementing this argument they point to the fact that the

2. Guaranty Mortg. Co. v. Wilcox, 62 Utah 184, 218 P. 133, 30 A.L.R. 1324; Miller v. Stuart, 69 Utah 250, 253 P. 900.
3. People v. Jackson, 24 Cal.App.2d 182, 74 P.2d 1085; State v. Lorentz, 221 Minn. 366, 22 N.W.2d 313; Union Land Association v. Ussher, 174 Or. 453, 149 P.2d 568; see also 47 Am.Jur. 566.
4. Cf. 68–3–2 U.C.A.1953 requiring that statutes generally be liberally construed with views to effect purposes.

deed is limited to "interment rights" and conclude that this amounts to a "burial certificate" or "burial contract" which would be within the statute. This analysis, however, does not find accord in our thinking. The terms "burial contract," and "burial certificate" import an arrangement for morticians' services, embalming, funeral and interment services which may or may not include the burial lot. The plaintiff's scheme of operation does not include the other services but is restricted to a sale of the lot alone.

■ Nor do the general terms in the statute, "beneficial interest in or title to property" and "any other instrument commonly known as a security" broaden the meaning of the statute to cover plaintiff's activities. Such general terms cannot be given a literal meaning independent of the context in which they are used. They must be understood in the light of and as characterized by the purpose of the statute, and viewed in relation to the entire context. When specific terms are followed by general terms, the latter are limited to things of like kind.[5] Consideration of the full text of the law in question manifests that it is directed at securities of the nature that are dealt with commercially. The term

"security" has been defined generally as: "A written assurance for the return of money."[6] Securities in the commercial sense usually signifies the investment of funds with a view to receiving a profit through the efforts of others than the investor for the use of his money.[7]

■ The sale of a cemetery lot to an individual is usually for the use of himself and family and is analogous to any other investment in real estate. It does not generally fall within the character of investment that is commonly understood as being a security.[8] It is to be conceded that under some circumstances the sale of such lots might be so regarded,[9] but in such cases it will be observed that there is some affirmative showing that the lots were being dealt with in gross or for speculative purposes.[10] E. g. in the case of State v. Lorentz, 221 Minn. 366, 22 N.W.2d 313, 163 A.L.R. 1036, a plan similar to that employed by plaintiff was held to be an investment contract and subject to security regulation. However, it was shown that purchases were being made by individuals for as many as 100 graves, thus indicating that speculation for resale was involved. The Minnesota court did recognize that as to burial lots

5. Donahue v. Warner Bros. Pic. Dist. Corp., 2 Utah 2d 256, 272 P.2d 177; see also 2 Sutherland, Statutory Construction, secs. 4909, 4911; 28 C.J.S., Ejusdem, p. 1049.
6. Jaffe v. Goldner, 251 Ill.App. 188.
7. See Prohaska v. Hemmer-Miller Dev. Co., 256 Ill.App. 331.
  5 Utah 2d—18

8. See 79 C.J.S., Security, p. 949, notes 97 and 98; 163 A.L.R. 1075.
9. Ibid.
10. Holloway v. Thompson, 112 Ind.App. 229, 42 N.E.2d 421; State v. Lorentz, 221 Minn. 366, 22 N.W.2d 313; In re Waldstein, 160 Misc. 763, 291 N.Y.S. 697.

sold to individuals in the usual course of business for their own use, the statute regulating the sale of securities would not apply. The record in the instant case contains no indication of any such volume purchases, and it cannot be assumed that lots are being sold for speculative purposes or for any purpose other than the personal use of the purchaser and his family. Any increase in the value of the lots, by reason of the development and beautification of the cemetery, or enhancement of values of properties, would be attributable to gain from a prudent investment rather than earnings from investing capital in an operating enterprise, or gains from speculation on investments as in the usual transaction in securities.

There is another aspect of the law of this state which suggests that the legislature did not intend the Securities Act to cover such a sale of cemetery lots as we are here concerned with. The 1955 Session of our Legislature enacted Chapter XI, S.L.U. 1955, 8-4-1 et seq., U.C.A.1953, which deals in a plenary manner with the regulation and control of the operation of cemeteries, mausoleums, etc., with particular emphasis on the creation, maintenance and application of their endowment funds. It is significant that the 1955 Act makes no provision for regulation of "burial contracts" and "burial certificates" which are expressly covered by the Securities Act; on the other hand, it does establish a Cemetery Board under the Department of Business Regulation upon which it confers regulatory powers over cemeteries and their endowment funds. It therefore seems plain that the legislature in the 1955 Act purposely omitted reference to "burial contracts" and "burial certificates" which were already covered under the Securities Act and that it designedly included in the later Act the other aspects of the operation of cemeteries, including such plans as are being sold by plaintiff.

It is our opinion that the business of the plaintiff carried on as hereinabove set out does not render it subject to the Securities Act.

No costs are awarded.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN, J., concurs in the result.

HENRIOD, Justice (concurring).

I concur, but do not join in the dictum that seems to push the door ajar for possible future departure from our announced rule that the blue sky laws of this state shall be strictly construed.[1] Any further liberality in construing a statute that presently is quite comprehensive in its inclusion of documents and plans within the term "security," at some unpredictable fu-

---

1. Guaranty Mortg. Co. v. Wilcox, Miller v. Stuart, cited in the main opinion.

ture time, conceivably could place in the hands of a very few men a busybody power and authority that undoubtedly could be used as an instrument of harassment and quite possibly might or could paralyze traffic in many perfectly legitimate trading enterprises.

Blue sky laws are swords with two edges. Best they be not sharpened unduly on one side and dulled on the other. We should not be unmindful of the fact that in the last two or three years of feverish uranium stock trading, millions were lost to the small investors, not necessarily through purchase of unregistered securities, but in many instances through purchase of stocks that had been registered with the state securities commission. Nor should we be unmindful that the losses suffered in the latter category in many cases were attributable to the false sense of security engendered because the stocks *had been registered* with the securities commission, which fact in and of itself induced the clerk, the carpenter, the stenographer and the other little person, economically speaking, to make their purchases of what was to prove worthless stock. If this fact was not the inducement, unscrupulous salesmen frequently pointed to the fact of registration as proof of the merit and stability of what later turned out to be nothing but fancy looking paper. The only compensating feature about such losses seems to be the fact that the purchasers of the worthless stock were trying to get rich quick, without any effort, and hence deserved to lose. There are two schools of thought as to whether the paternalism of blue sky laws in attempting to protect the public, is a fair substitute for the individualism of the caveat emptor philosophy, and we should scrutinize such laws carefully and strictly before extending the scope of such paternalistic legislation.