State v. Short.

---

No. 26,630.

The State of Kansas, *Appellant,* v. E. J. Short, *Appellee.*

SYLLABUS BY THE COURT.

Licenses—*Sale of Speculative Securities—Criminal Responsibility—Blue-sky Law.* Except as permitted by the express terms of R. S. 17-1213, it is unlawful to sell or offer for sale speculative securities without a prior filing with the bank commissioner of the matters and things prescribed by R. S. 17-1202 and without a permit issued by the bank commissioner by order of the charter board under R. S. 17-1204.

Appeal from Douglas district court; Hugh Means, judge. Opinion filed June 12, 1926. Appeal sustained.

*C. B. Griffith,* attorney-general, *C. A. Burnett, Roland Boynton,* assistant attorneys-general, and *George K. Melvin,* county attorney, for the appellant; *R. E. Melvin,* of Lawrence, of counsel.

*H. C. Doyle* and *Donald W. Johnson,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was a prosecution in two counts for violation of the blue-sky law.

In count one the state charged that E. J. Short and another, acting

Criminal Law, 17 C. J. p. 40 n. 25.  Licenses, 37 C. J. pp. 270 n. 44, 273 n. 71, 276 n. 39, 278 n. 64.  Statutes, 36 Cyc. pp. 1122 n. 47, 1128 n. 54, 1164 n. 66.

as partners and promoters of speculative securities, did unlawfully and feloniously sell to C. R. Albright certain speculative securities described, without there having first been filed with the bank commissioner and approved by him a copy of the securities so to be promoted, and without having done any of the dozen other things which the statute (R. S. 17-1202) requires precedent to the selling or offering for sale of such stuff in this state.

In count two the charge was that of feloniously offering for sale by advertisements, circulars or prospectus, and other forms of public offerings, such speculative securities under the conditions outlined in count one.

Defendant's motion to quash was overruled and he was convicted on both counts. He filed a lengthy motion for a new trial, which the trial court sustained upon the express ground that it had erroneously instructed the jury that it was unnecessary for the state to establish the fact that the sale was effected by means of advertising, circulars or prospectus.

The state reserved the question and brings it here for review. Defendant filed a cross appeal, but in his brief he announces that the matters therein assigned will not be pressed on our attention.

Our "blue-sky" legislation has been developed in the following statutes:

"An act to provide for the regulation and supervision of investment companies and providing penalties for the violation thereof." (Laws 1911, ch. 133.)

"An act amending sections 1, 2, 5, 10 and 13 of chapter 133 of the Session Laws of 1911, and repealing said original sections 1, 2, 5, 10 and 13 of chapter 133 of the Session Laws of 1911." (Laws 1913, ch. 141.)

"An act to prevent unfairness, imposition or fraud in the sale or disposition of certain 'securities' herein defined by requiring an inspection thereof, providing for such inspection, supervision and regulation of the business of any person, association, partnership or corporation engaged or intending to engage, whether as principal, broker or agent, in the sale of any such securities in the state of Kansas, as may be necessary to prevent unfairness, imposition or fraud in the sale or disposition of such securities, and prescribing penalties for the violation thereof, and repealing chapter 133 of the Session Laws of 1911 and chapter 141 of the Session Laws of 1913." (Laws 1915, ch. 164; Gen. Stat. 1915, §§ 9458 to 9476, inclusive.)

"An act amending sections 9458, 9459, 9461, 9462, 9470 and 9471 of the General Statutes of 1915, and repealing said original sections 9458, 9459, 9461, 9462, 9470 and 9471." (Laws of 1919, ch. 153.)

Aside from an unimportant change made by the legislature of 1925 (Laws 1925, ch. 7, § 3), our present law regulating and restricting the sale of speculative securities is the act of 1915 as amended

by the act of 1919, and appears in the Revised Statutes of 1923 as R. S. 17-1201 to 17-1218, inclusive.

The defendant was charged in two counts with selling and offering for sale speculative securities without complying with amended section 2 of the statute, which reads:

"It shall be unlawful hereafter for any person, copartnership, association or corporation (hereinafter called the promoter), either as principal or through brokers or agents, to sell or offer for sale by means of any advertisements, circulars or prospectus, or by any other form of public offering, any speculative securities in this state unless there first shall have been filed with the bank commissioner and approved by him: (1) A copy of the securities so to be promoted; (2) a statement in substantial detail of the assets and liabilities of the person or company making and issuing such securities and of any person or company guaranteeing the same, including specifically the total amount of such securities and of any securities prior thereto in interest or lien authorized or issued by any such person or company; (3) the name of the fiscal agent, if any, who it is proposed shall handle the sale of such proposed securities, together with a statement of the financial standing of such fiscal agent; (4) if such securities are secured by mortgage or other lien, a copy of such mortgage or of the instrument creating such lien and a complete appraisal or valuation of the property covered thereby, with a specified statement of all prior liens thereon, if any; (5) a full statement of facts showing the gross and net earnings, actual or estimated, of any person or company making and issuing or guaranteeing such securities, or of any property covered by any such mortgage or lien; (6) all knowledge or information in the possession of such promoter relative to the character or value of such securities, or of the property or earning power of the person or company making and issuing or guaranteeing the same; (7) a copy of any general or public prospectus or advertising matter which is to be used in connection with such promotion, and no such prospectus or advertising matter shall be used unless the same has been filed as herein provided; (8) the names, addresses and selling territory in this state of any agents by or through whom any such securities are to be sold, and no such agents shall be employed unless such statement with respect to them has been filed hereunder, and there shall be paid to the bank commissioner a registration fee of one dollar for each such agent. The payment of such fee shall be payment in full for all fees for registration of such agent until and including the first day of March next following; (9) the name and address of such promoter, including the names and addresses of all partners, if the promoter be a partnership, and the names and addresses of the directors or trustees and of any person owning ten per centum or more of the capital stock, if the promoter be a corporation or association; (10) a statement showing in detail the plan on which the business or enterprise is to be conducted; (11) the articles of copartnership or association, and all other papers pertaining to its organization, if the securities be insured or guaranteed by a copartnership or unincorporated association; (12) a copy of its charter and by-laws if the securities be issued or guaranteed by a corporation; (13) a filing fee of twenty-five dollars; and in no event shall any speculative securi-

ties be sold or offered for sale until a permit shall have been issued as hereinafter provided." (R. S. 17-1202.)

In this connection it will serve our convenience to set down herewith two other sections of the statute:

"This act shall not apply to the owner of any speculative security who is not the maker or issuer thereof, who shall acquire and sell the same for his own account in the usual and ordinary course of business, and not for the direct or indirect promotion of any enterprise or scheme within the purview of this act: *Provided*, That such ownership is in good faith. Repeated or successive sales of any such speculative security or securities shall be *prima facie* evidence that the claim of ownership is not *bona fide*, or is a mere shift or device to evade the provisions of this act: *Provided*, That this act shall apply to brokers and stock exchanges and members thereof engaged in the purchase, handling and sale on the market of speculative securities, either as owners or for a commission." (R. S. 17-1213.)

"Any person, partnership, association or corporation who shall commit in this state any act declared unlawful by sections 2, 4, 7 or 9 of this act shall be deemed guilty of a felony, and on conviction in any court of competent jurisdiction be punished by a fine of not less than one hundred nor more than five thousand dollars, or by confinement in the Kansas state penitentiary for a term of not less than one nor more than seven years." (R. S. 17-1212.)

While the statute is not as precisely drawn to avoid debatable problems of interpretation as might be desired, the legislative intent has been to place the traffic of promoting and dealing in speculative securities under rigid governmental control; and the only exemption therefrom is that accorded to the good-faith owner of such securities who acquires them and seeks to sell them on his own account in the ordinary course of business and not for the direct or indirect promotion of any blue-sky enterprise within the purview of the act.

Since the legislature has expressly designated who shall be exempt from the operation of the act and under what circumstances that exemption shall apply, there are no other persons, and no persons under any other conditions, who are engaged in the business of selling speculative securities or offering them for sale who can avoid the penalties of the act if they have not complied with its terms and received a permit to deal in speculative securities. To make assurance doubly sure that governmental control shall reach all engaged in such traffic, note. again the all-inclusive language of the concluding clause of section 2 of the act:

"*And in no event shall any speculative securities be sold or offered for sale until a permit shall have been issued* as hereinafter provided." (R. S. 17-1202.)

A prerequisite to the procuring of a permit is the filing with the bank commissioner of the data required by R. S. 17-1202; and since defendant was a mere promoter and not an owner who was dealing with the securities in the usual course of business, and had not filed that data, he could "in no event" sell or offer to sell the securities without violating the act; and a sale without the precedent filing was a felonious violation of section 2 of the act (R. S. 17-1212), and an offer to sell by any of the characteristic means of promoting blue-sky schemes—"by means of any advertisements, circulars or prospectus, or by any other form of public offering"—was similarly a felonious violation of section 2 of the act.

We note the careful analysis of the first part of R. S. 17-1202 to which it was subjected by the trial court; but giving due significance to the last clause of the same section, and due significance also to R. S. 17-1212 and 17-1213, we find ourselves unable to agree with its conclusions.

Defendant argues that the state has no right to appeal from an order granting a new trial in a criminal case. This contention is only partly correct. The code of criminal procedure provides:

"Appeals to the supreme court may be taken by the state in the following cases, and no other: First, upon a judgment for the defendant on quashing or setting aside an indictment or information; second, upon an order of the court arresting the judgment; third, upon a question reserved by the state." (R. S. 62-1703.)

"In case of an appeal from a question reserved on the part of the state, it shall not be necessary for the clerk of the court below to certify to or transmit to the supreme court any part of the proceedings and record except a certified copy of the notice of appeal and of the judgment of acquittal. When the question reserved is defectively stayed, the supreme court may direct any other part of the proceedings and record to be certified to it." (R. S. 62-1711.)

But for this statutory right conferred on the state, an erroneous ruling of a trial court might completely and permanently frustrate the administration of justice within the judicial district presided over by the particular judge who made such ruling. It might result that in an entire judicial bailiwick of a district judge comprising half a dozen counties some feature of the blue-sky law, or the antitrust law, or any other penal statute, would be judicially nullified by an erroneous interpretation of some feature of any such act, while in other judicial bailiwicks other trial judges were giving an interpretation to them that resulted in general obedience to their

terms.  The way provided by our criminal code to prevent such a situation is by granting to the state the right to reserve for appellate review any adverse ruling which the state's official prosecutors deem of sufficient importance to the proper administration of justice to bring to this court's attention for authoritative determination. (*State v. Zimmerman,* 31 Kan. 85, 1 Pac. 257; *State v. Forney,* 31 Kan. 635, 3 Pac. 305; *Junction City v. Keeffe,* 40 Kan. 275, 278, 18 Pac. 375; *State v. Rook,* 61 Kan. 382, 59 Pac. 653; *State v. Bland,* 91 Kan. 160, 165 *et seq.,* 136 Pac. 947; *State v. Railway Co.,* 96 Kan. 609, 628, 152 Pac. 777; *State v. Allen,* 107 Kan. 407, 411, 191 Pac. 476, and citations; *State, ex rel., v. Grove,* 109 Kan. 619, 626, 201 Pac. 82.)  If a determination of the question reserved would be altogether without practical result, the state's appeal may be dismissed (*State v. Aurell,* 112 Kan. 821, 212 Pac. 899), but in the present case a new trial has been ordered on motion of defendant, and consequently the state's reserved question is not moot.  (*State v. Allen,* supra.)

Defendant next argues that the statute was not violated by sales or offerings for sale privately made.  We have disposed of this point in discussing the question reserved by the state.  Defendant's contention might be good if it were not for the significance we are bound to give to R. S. 17-1213, 17-1212, and the last clause of 17-1202.  The statute is to be read and construed as a whole, and we are bound to hold that "in no event" shall sales or offerings of speculative securities be made without the prerequisite filing with the bank commissioner and without the statutory permit, except under the exemption privileges allowed under R. S. 17-1213.  The suggestion is made that to extend the scope of the statute to include private sales and private offerings would do violence to constitutional inhibitions.  We think not.  We think the constitutional rights of citizens in their private traffic in speculative securities in the usual course of business are adequately protected by R. S. 17-1213, assuming but not deciding that some range of freedom of traffic in the promotion and purveying of blue-sky securities is guaranteed by constitutional law.

The appeal of the state on its question reserved is sustained.