In the Matter of HAROLD WALDSTEIN, Petitioner, to Vacate and Quash an Alleged Subpœna, Dated August 28, 1936, Purporting to Have Been Issued by the ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Respondent.

Supreme Court, Special Term, Albany County, October 22, 1936.

*Coplin Yaras*, for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*John F. Tucker* of counsel], for the respondent.

SCHENCK, J. This is an application for an order vacating a subpœna issued by the Attorney-General of the State of New York, pursuant to the Martin Act, contained in article 23-A of the General Business Law. A subpœna has been issued for the purpose of investigating the practices of The First American Corporation, the Arlington Memorial Park Association and the Fidelity Guaranty Corporation of Cincinnati, Ohio, which corporations are engaged in the sale of certain rights and interests evidenced by documents which will be hereinafter described.

The point at issue is the right of the Attorney-General to make an investigation under the statute in connection with the particular practices of these corporations. Subdivision 1 of section 352 of article 23-A reads in part as follows: " Whenever it shall appear to the Attorney-General, either upon complaint or otherwise, * * * that in the issuance, sale, promotion, negotiation, advertisement or distribution within this State, of any * * * evidences of interest or indebtedness or other securities, including oil and mineral deeds or leases * * * sold or transferred in whole or in part to the purchaser where the same do not effect a transfer of the title in fee simple to the land, * * * any * * *

corporation, * * * or association shall have employed, * * * any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise, * * * or shall have engaged in * * * any practice or transaction or course of business relating to the purchase or sale of securities * * * which is fraudulent * * * and which has operated or which would operate as a fraud upon the purchaser, * * * he may in his discretion either require or permit such * * * corporation, * * * to file with him a statement in writing under oath or otherwise as to all the facts and circumstances concerning the subject matter which he believes it is to the public interest to investigate."

It is claimed on the part of the corporations proposed to be investigated that the rights and interests evidenced by the documents offered for sale are not "securities" in any sense, and, therefore, do not come within the terms of the statute.

It appears that the Arlington Memorial Park Association is the owner of a burying ground situated in the county of Hamilton, State of Ohio, and located near the city of Cincinnati. The burying ground is called "Arlington Memorial Park," and from the photographs and descriptive material appears to be a place of much natural beauty. It contains a chapel, singing tower, sunken gardens, a mirror pool, fountains, etc. One of the attractive features of this burying ground is the absence of monuments, eliminating variation or competition in the manner of marking graves. Burials are marked by uniform bronze plaques set flush with the ground, and thus the natural terrain of the park is preserved.

It further appears that The First American Corporation is engaged in selling burial rights in this cemetery. Prospective purchasers are approached and an effort is made to sell a large number of these rights. In some instances, upwards of fifty burial rights are sold to one person and a certificate is issued granting burial rights in the number of lots purchased. The certificate, however, states," grantee acknowledges the right of burial in said lots to be the only interest hereby conveyed." The First American Corporation is the selling agency of the Arlington Memorial Park Association. It also is a selling agency for the purchasers of lots. The plan is for the purchaser of lots to authorize The First American Corporation to resell his lots after purchase, at a price considerably in excess of the cost.

In connection with the right of sale or option which is given to The First American Corporation by the purchaser, the Fidelity Guaranty Corporation of Cincinnati, Ohio, issues a guaranty

whereby it guarantees, among other things, " that the Arlington Memorial Park Association has duly contracted for the creation of a fund for the perpetual care and maintenance of the Arlington Memorial Park." It states in the guaranty that the owner of the burial right, having entered into an option agreement with The First American Corporation for the sale of the burial right, the Fidelity Guaranty Corporation agrees to pay to the owner the sum of six dollars per annum per lot for a period of two years, unless the option contract is canceled, etc.

This financial structure contains a certificate or deed issued by the Arlington Memorial Park Association, an option agreement, a guaranty by a surety company and a return of six dollars per lot for two years. These features have a sales value, because of the surety company guaranty, and the payment for the option, which has the tendency to induce the belief that there is a market for resales, as the mere option to sell is valuable. Actually, these devices add nothing, for the benefit of the purchaser, to the real purpose of the enterprise, which is to dispose of large numbers of burial lots, to be held by investors until they are absorbed in the normal course of events.

It is apparent, therefore, from the methods adopted in selling the burial rights in question that the purpose is to place these burial rights in' the hands of purchasers who will hold them as an investment or a speculation. The selling of the lots is undoubtedly for the purpose of financing or promoting the enterprise on the one hand, and creating a means of investment or distributing the means of financing among the public, on the other.

If this is so, then The First American Corporation is engaged in selling securities within the meaning of the statute.

The term " security " has no exactly defined legal definition. Generically, the word has reference to written instruments, usually for the payment of money or evidences of a debt, and being more than a mere promise of the debtor of a general liability on his part, but having as collateral to it a pledge of property or some additional obligation. Blackstone speaks of a bill of exchange as a security, which he says was originally invented among merchants in different countries for the more easy remittance of money from one to the other. (2 Black. Comm. [17th ed.] p. 466.) In calling it a security, probably he had in mind the fact that a bill of exchange may consist of several personal obligations, which makes more certain or secure the primary obligation.

By common usage, however, the term has acquired a much broader signification. It is now generally used to refer to instruments for the payment of money, or evidencing title or equity, with

or without some collateral obligation, and which are commonly dealt in for the purpose of financing and investment.

By modern business methods, those instruments which are used to facilitate dealing in commodities, such as short-term notes, bills of lading, bills of exchange and all the other inventions of the commercial banker, are not referred to as securities, although they may be collaterally secured in some way. Those instruments, however, secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed securities.

Thus, certificates of stock are now regarded as securities, although they but represent a share of the capital stock of a corporation, the interest of the owner in the management of the corporation, and his interest in its surplus assets upon its dissolution.

In general, it may be said that any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment, is a security according to the modern meaning of that term.

Not only is The First American Corporation engaged in the sale of securities, but it also sells evidence of interest by means of the certificates which give only the rights of burial and evidences of indebtedness. The guaranty agreement creates a debt since the Fidelity Guaranty Corporation agrees to pay to the owner six dollars per lot for the term of two years, unless the option contract is canceled. These are evidences of interest and indebtedness and are, in any event, of the nature of securities. *Noscitur a sociis.* Therefore, they come within the statute.

The application to annul the subpœna is denied.