

See, also, 33 F.Supp. 988.

Joseph P. Rooney, Atty., Securities & Exchange Commission, of Boston, Mass. (Chester T. Lane, General Counsel, S. & E. C. Christopher M. Jenks, Asst. General Counsel, Jeremiah J. O'Connor, Atty., John Logan O'Donnell, Atty., Edward H. Cashion, Atty., and Eugene Gressman, Atty., all of Washington, D. C., and Gerard F. Treanor, Atty., of S. & E. C., of Boston, Mass., on the brief), for plaintiff.

John C. Johnston, of Boston, Mass., for defendant.

SWEENEY, District Judge.

The plaintiff seeks to permanently enjoin the defendants from violating certain sections of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., in the sale of ship shares.

The principal questions for decision are whether the so-called ship shares are securities within the meaning of Section 2 (1) of the said Act, 15 U.S.C.A. § 77b (1), and whether the defendants, in offering the ship shares for sale to the public, attempted to obtain money and property by means of untrue statements of material facts or omissions of such material facts in violation of Section 17 (a) of the said Act, 15 U.S.C.A. § 77q (a).

### Findings of Fact

In May and June of 1939, the defendant Pyne, doing business under the name and style of the Central Wharf Fishing Company, and the defendant Edgerly purchased two fishing vessels, one the "Madame X" for $1,350, and the other, the "Barbara" for $4,600. These ships have since been operated as fishing vessels. Early in 1940, the defendants Pyne and Edgerly employed the defendant Jones to sell to the public shares in the "Barbara" and "Madame X",

---

## SECURITIES AND EXCHANGE COMMISSION v. PYNE et al.

### Civ. A. No. 662.

District Court, D. Massachusetts.

June 16, 1941.

and in other boats which they contemplated building. In some manner they secured a list of the stockholders of the Central Maine Power Company, and these persons were circularized through the mail. The mail sent out by the defendants Pyne and Edgerly from Boston to the prospective purchasers (hereinafter referred to as prospects), some of whom lived in Maine, contained a glowing account of the possibilities of the venture, and implied that handsome profits of twenty-five or thirty times the investment would be made. When any of the prospects indicated interest in the ship shares, the defendants Jones or Pyne called on them for the purpose of explaining the details of the plan under which they were to operate, and tried to induce them to invest in the so-called ship shares. For such shares as Jones sold, he was to receive a commission of fifteen per centum.

The plan as outlined to the prospects was that the money received from the sale of ship shares was to be used in building new fishing vessels, and the interest of the investor was to be evidenced by a "Bill of Sale of Licensed Vessel under Twenty Tons", prepared by the Bureau of Marine Inspection and Navigation of the United States Department of Commerce. The "Barbara" and the "Madame X", and such other vessels as were to be built, were to be used in the fishing trade. Each share was to be sold at $1,000, and, pending the construction of the new boats, the prospects were to be given temporary interests or shares in either the "Barbara" or "Madame X" in order that they might receive an immediate return on their investment in the form of a pro rata share of the net proceeds realized from the operations of the "Barbara" and "Madame X".

No registration statement has ever been in effect with the Securities and Exchange Commission with respect to ship shares or interests in the "Barbara", and "Madame X", or those fishing vessels that were in contemplated construction by the defendants Pyne and Edgerly. The defendants have used the means and instruments of transportation and means of communication in interstate commerce and have used the mails in their attempt to sell these interests of ship shares.

In attempting to make sales to prospects in Maine these defendants, either directly or through their agent Jones, made misrepresentations as to the number of vessels then engaged in the fishing business (they stated they were then operating a fleet of eight or nine vessels where in fact they were operating only two), made misrepresentations as to the earning capacity of the "Barbara" and "Madame X" (they stated that the two vessels had earned $30,000 in a six month period when in fact they had earned only a fraction of such amount), made misrepresentations as to the fair market value of the "Barbara" and "Madame X" (they stated that the "Barbara" had a fair market value of $48,000, and the "Madame X" of $32,000 when in fact the fair market value of these vessels was only a small fraction of such amounts), failed to disclose that the commissions from the sale of ship shares were to be paid to the defendant Jones, made untrue statements from which the prospects could reasonably infer that the "Madame X" had made sufficient on one trip to pay for a fathometer which had cost $3,700, and failed to disclose to prospects that another vessel, the "Lulu" which they claimed they owned, had been sunk, and was therefore non-productive.

### Conclusions of Law

From the foregoing facts I conclude and rule as follows:

(1) That the ship shares or undivided interests in vessels which the defendants Leo C. Pyne, doing business as Central Wharf Fishing Company, Carl F. Edgerly, and Curtis L. Jones offered and are offering for sale, attempted and are attempting to dispose of, and solicited and are soliciting offers to buy, which carry with them the right to the receipts of profits by the prospective purchasers through efforts other than their own and involved "the investment of money with the expectation of profits through the efforts of other persons", are securities within the meaning of Section 2 (1) of the Securities Act of 1933, 15 U.S.C.A. § 77b (1).

(2) That the defendants in the sale of the securities specified above, by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, attempted to obtain money and property by means of untrue statements of material facts and by means of omitting to state material facts which necessarily should be divulged in order not to make the statements misleading in the light of the circumstances under which they were made; and have engaged and are engaging in transactions, practices, and courses of busi-

ness which operate and will operate as a fraud and deceit upon purchasers in violation of Section 17 (a) of the Securities Act of 1933, 15 U.S.C.A. § 77q (a).

(3) That at the time of commencement of this action the defendants Leo C. Pyne, doing business as Central Wharf Fishing Company, Carl F. Edgerly and Curtis L. Jones were engaged and about to engage in acts and practices which constitute and will constitute violations of Sections 5 (a) and 17 (a) of the Securities Act of 1933, 15 U.S.C.A. §§ 77e (a) and 77q (a).

(4) That the defendants Leo C. Pyne, doing business as Central Wharf Fishing Company, Carl F. Edgerly, and Curtis L. Jones have made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell the securities specified above through the use or medium of a prospectus or otherwise in violation of Section 5 (a) of the Securities Act of 1933, 15 U.S.C.A. § 77e (a).

(5) That the plaintiff is entitled to a final judgment enjoining and restraining the defendants, and each of them, from the acts and practices constituting violations of Sections 5 (a) and 17 (a) of the Securities Act of 1933, 15 U.S.C.A. §§ 77e (a) and 77q (a), set forth in the foregoing findings of fact and acts and practices of similar purport or object.