## UNITED STATES v. ROYAL LOAN CO. et al.

### No. 3299.

District Court, E. D. Missouri, E. D.

June 27, 1945.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Frank A. Michels, Sp. Assts. to the Atty. Gen., on the brief), for plaintiff.

Ben L. Shifrin and Taylor, Mayer, Shifrin & Willer, all of St. Louis, Mo., for defendants.

HULEN, District Judge.

Plaintiff by this action seeks to collect documentary stamp taxes from defendants, growing out of the issuance by the defendants of promissory notes. The case was submitted upon an agreed statement of facts and testimony, the latter being the opinion of brokers on the meaning of the term "corporate securities."

The defendant Royal Loan Company is the parent corporation of the other defendants. On January 16, 1940, the Royal Loan Company made application to the Mississippi Valley Trust Company for a line of credit of $300,000. At that time the Royal Loan Company had outstanding obligations evidenced by promissory notes in excess of $900,000. As a condition for extending credit to the Royal Loan Company, the trust company required that the creditors of the Royal Loan Company subordinate their claims to the liability of the Royal Loan Company "to any bank or trust company from which said Royal Loan Company would borrow money." This was agreed to. In order to insure compliance with the agreement, the trust company required the notes subordinated to the indebtedness of the trust company to be numbered and registered with the trust company. The subsidiary corporations joined in the agreement of the Royal Loan Company with the trust company, and all notes issued by the subsidiary companies were to be subordinate to the bank loans in the same manner as the notes issued by the Royal Loan Company. In carrying out this arrangement, all outstanding notes of both the Royal Loan Company and its subsidiaries were called in and new serial notes registered with the trust company, issued in exchange. The notes [1] were all execu-

---

[1] Following is a copy of the printed form of note used:

"$—— Note No. —— St. Louis, Missouri, ——, 19—

"One (1) year after demand, for value received, we promise to pay to the order of ——————————————
—————————————— Dollars

with interest from date at the rate of —— per cent per annum.

"The principal of this note to be payable at the office of the Mississippi Valley Trust Co. in the City of St. Louis, Missouri, interest to be payable monthly at the office of the Company in the City of St. Louis, Missouri.

ted on the same form, varying only as to number, amounts, and ownership. In making the exchange, many of the notes in large denominations were split up into notes of smaller denomination. One hundred thirty-four instruments were issued to sixty individuals, in amounts ranging from a minimum of $100 to a maximum of $150,-000, represented by each note, the total issuance of notes being $987,750. The agreed statement of facts contains the following two paragraphs:

"That thereafter, in view of the fact that some of the money borrowed from individuals was being used by its various subsidiaries, it was agreed that the various subsidiary companies would issue their notes for the money so advanced and used by the various subsidiaries in lieu of the notes of the Royal Loan Company. * * *

"That said notes are not secured in any way, but are based on the credit of the maker."

It is plaintiff's position that the series of notes issued by the defendants in compliance with the agreement with the trust company are subject to a tax under Section 1801 of the Internal Revenue Code as amended by section 1 of the Revenue Act of 1939.[2]

The Act imposes a tax of ten cents on each $100 face value or fraction thereof on all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, known generally as corporate securities. Plaintiff further claims that the transfer of the instruments is subject to a tax of four cents on each $100 of face value under Section 3481(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3481(a). If the instruments are taxable under Section 1801, it follows that they are taxable under Section 3481 on their transfer.

In opposition to plaintiff's claim, defendants assert the notes are not subject to tax under Section 1801, first because the original notes for which the notes in question were given in exchange, were not subject to the tax; second that the registration of the notes was solely for the benefit of the trust company to insure subordination of obligations of the defendants to the trust company; third, that the notes are not secured and are based only on the general credit of the defendants; fourth, that the notes are not sold to the public generally;

---

"The undersigned shall have the privilege of paying this note prior to its maturity date by giving the registered owner hereof ninety (90) days' written notice of its intention so to do; and at the end of said 90-day period, shall be entitled to deposit at the Mississippi Valley Trust Co. for the benefit of the undersigned the amount due on said note plus accrued interest, including said 90-day period, which amount shall be applied towards the payment of this note. Should the registered owner fail to surrender his note and receive the money deposited for the payment thereof after said 90 day period, no further interest shall be due or payable to the registered holder after said time.

"This note is subject to the terms of a certain contract dated the second day of January, 1940, between the undersigned and the Mississippi Valley Trust Co. of St. Louis, Missouri, which contract is by reference made a part hereof as if fully set out herein; and for valuable consideration, the claim represented by this note is hereby subordinated to the claim of any bank or trust company that may have or may hereafter extend credit to the Royal Loan Company.

"This note shall not become or be valid for any purpose until registered by the Mississippi Valley Trust Co., and no transfer hereof shall be valid unless endorsed by the registered holder hereof to a registered transferee, and a new note issued and the new note registered by the said Mississippi Valley Trust Co.

      "Royal Loan Company,
        "By ————————
              President.
        "By ————————

"Registrar's Certificate.

"This is to certify that this note has been duly registered in the name of the above holder on the records of the undersigned.

      "Mississippi Valley Trust Company
        "By ————————
             Trust Officer."

2 Sec. 1801. Corporate securities—

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 10 cents until July 1, 1941, and 5 cents thereafter: Provided, That every renewal of the foregoing shall be taxed as a new issue: * * *." 26 U.S.C.A. Int.Rev.Code § 1801.

438

fifth, that the undisputed evidence is that they are not "known generally as corporate securities;" and sixth, they do not represent investments. If the instruments in question are subject to tax under Section 1801, it is because they come within the description contained in that section of the Act " * * * and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities * * *."

The Eighth Circuit Court of Appeals in Willcuts v. Investors' Syndicate, 57 F.2d 811, 814, describes corporate securities as follows: "A corporate security is simply a means adopted by the corporation to secure funds which it can employ in its business; and, by making a larger return on the fund so secured, it is enabled to pay its obligations under the corporate security issued, and also secure an income for itself"—and states the purpose of such instruments to be: "The purpose of the issue of the certificate was the same as the purpose ordinarily involved in issuing corporate securities; namely, to secure the money of others for use in the corporate business."

The instruments issued by the defendants represented a means adopted by the corporation to secure funds to employ in its loan business, as evidenced by the quotation from the agreed statement of facts set out above. It is evident that the instruments issued by the defendants come within the meaning of that term described in the Willcuts case, and were for the purpose referred to in the Willcuts case.

In United States v. American Trust & Banking Co., (125 F.2d 113, 115), the Sixth Circuit Court of Appeals, in describing corporate securities, used this language: " 'Security' is defined as 'an evidence of debt or of property, as a bond, stock certificate, or other instrument, etc.' Webster's New International Dictionary. The word is used widely as a synonym for 'investment.' In re Scorer, 94 L.J.Ch. 196. In the case of In re Waldstein, 160 Misc. 763, 291 N.Y.S. 697, 700, in defining the term 'security,' the court said: 'The term "security" has no exactly defined legal definition. Generically, the word has reference to written instruments, usually for the payment of money or evidences of a debt, and being more than a mere promise of the debtor of a general liability on his part, but having as collateral to it a pledge of property or some additional obligation. * * * Those instruments, however, secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed securities.' "

The notes issued by the defendants are for definite sums payable "one year after demand," bear interest at eight per cent, are transferable according to the terms printed on the face thereof, are numbered serially, and are "in registered form." They constitute evidences of property and represent investments. They may not be gilt edged corporate securities, as indeed they are unsecured. The rate of interest indicates the risk taken by the holders, but they are the general obligations of the defendant corporations, subject to the indebtedness of defendant corporations to banks and trust companies. That they were given in exchange for outstanding securities; that the registration was to meet requirements of the trust company; that they are not secured but are the general obligations of the defendants, subject to obligations to banks and trust companies; that they are not sold to the public generally; are conditions and exceptions not covered by any term in Section 1801 of the Internal Revenue Code. The language of the act contains no qualifications as to grade of security, reason for its registration, or that it must be offered to the public generally. That the original obligations for which the notes in question were issued, were not subject to the tax, is of no importance. It was by the change from the unregistered to registered securities that the notes came within the purview of the Act. In the absence of qualifying words in the Act, this Court is without power to write them into the law. In the Willcuts case, the Court made the following observation on distinguishing features that rendered corporate securities taxable or non-taxable: "The statute makes no distinction for taxing purposes between absolute and conditional obligations to pay; the latter as well as the former are taxed."

The testimony of brokers as to what was considered corporate securities by them, namely stocks, bonds, and debentures, if followed, would nullify the provision in the statute which, after naming specifically bonds, debentures and certificates of indebtedness, proceeds to provide that "all instru-

ments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities," shall be subject to the tax. We find nothing in the Act, nor any authority to support the defendants' position that the term "known generally" is restricted to what those engaged in the stock broker's business consider "corporate securities."

We conclude that the securities issued by the defendants under the agreement with the trust company are subject to the stamp tax. Findings of fact, conclusions of law, and order will be submitted.