No. 45,428

STATE OF KANSAS, *Appellee,* v. THOMAS C. HODGE, *Appellant.*

(460 P. 2d 596)

Opinion filed November 8, 1969.

*Donald D. Barry,* of Topeka, argued the cause and was on the brief for the appellant.

*Richard Seaton,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, and *E. Edward Johnson,* Special Assistant Attorney General, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant is charged with selling securities without having registered them with the securities commissioner as required by K. S. A. 17-1255, and with failure to register as a broker-dealer in connection with the sale of such securities as required by K. S. A. 17-1254. Appeal has been duly perfected by the defendant from a conviction on each count.

The underlying question is whether the appellant was engaged in selling securities.

The state charged that Thomas C. Hodge (defendant-appellant) sold a security on September 4, 1965, to La Wanda Burkett without registering the security with the securities commissioner of Kansas (Count 1), and that he did not register as a broker-dealer for this transaction (Count 2). The state also charges that the appellant sold a security on or about the 7th day of September, 1965, to Otto Buller without registering the security with the securities commis-

sioner of Kansas (Count 4), and that he did not register as a broker-dealer for this transaction (Count 5). Numerous other courts were dismissed prior to trial.

The facts are not in dispute, the state and the appellant having entered into a stipulation. In fact, the only evidence introduced in the trial court for the jury to consider was the stipulation entered into between the parties and the two exhibits attached to the stipulation. The controversy involves the legal interpretation and implications of these stipulated facts. The stipulation reads:

"The defendant agrees that on or about the 4th day of September, 1965, he did approach La Wanda Burkett, that Mrs. La Wanda Burkett did give to Mr. Hodge the sum of $2,500 and that he did leave with her the receipt in lieu of promissory contract which will be admitted into evidence and shall be marked as State's Exhibit No. 1.

"That on or about the 7th day of September, 1965, Mr. Hodge did approach one Mr. Otto Buller, that Otto Buller did give to Mr. Hodge the sum of $500 and that Mr. Hodge left with him the instrument entitled receipt in lieu of promissory contract. That the receipt shall be marked as State's Exhibit No. 2.

"The person giving the money to Mr. Hodge expected that he repay it according to terms of the agreement. Mr. Hodge promised to pay the money at a date specified in the instruments.

"It is agreed that Mr. Hodge was not registered as a broker-dealer and that the instrument entitled receipts in lieu of promissory contract were not registered with the Securities Commissioner's Office of the State of Kansas."

The stipulation is dated May 16, 1968, and the state's exhibits Nos. 1 and 2, except for the amounts of money and names, are identical and in the following form:

"RECEIPT IN LIEU OF PROMISSORY CONTRACT

"Received of ＿＿＿＿＿＿＿＿＿＿ THE SUM OF ＿＿＿＿＿＿ dollars, $＿＿＿＿＿＿.

"This receipt is issued to those persons participating in the special investment offer made by the Tomal Company. It is hereby understood that the Tomal Company shall issue to the above named party a promissory contract which shall have a face value of twice the amount of the above named amount. The following stipulations shall pertain to this receipt and the above mentioned promissory contract:

"1. Said contract shall be dated 1 October 1965.

"2. Said contract shall have a face value of twice the amount of this receipt or $＿＿＿＿＿＿ whichever shall be greater.

"3. Said contract shall be issued only in conjunction with this receipt and no other person or persons shall be entitled to said contract.

"4. Said contract shall further stipulate that a payment in the amount of

this receipt shall be made no later than 1 April 1966 and one (1) additional payment of the same amount shall be made no later than 1 October 1966. These payments shall constitute any and all monies due the above named person according to the promissory contract.

"NO OTHER AGREEMENTS SHALL BE ISSUED OR RECOGNIZED

"WITNESS_____

SIGNED _____ Dated at _____,

_____, this _____ day of _____, 1965."

Challenges were made by the defendant at various points in the proceeding by a motion to discharge, objections to instructions, in his motion for a new trial, and in a motion for arrest of judgment, raising the points presented by this appeal.

The trial court instructed, among other things, that under the stipulated facts the documents in question were securities as a matter of law, and that such transactions were not exempt under the securities act. The trial court also instructed as to the meaning of the word "willfully," and as to the meaning of "broker-dealer," "sale," "sell," and "offer" or "offer to sell" as used in the Kansas securities act. (See K. S. A. 17-1252.)

Contrary to the appellant's pleas a verdict of guilty was entered upon each count by the jury, and the appellant was sentenced to the Kansas state penitentiary for confinement according to law on each of the counts.

Although the "Receipt in Lieu of Promissory Contract" recites that the terms set forth in the receipt will be exactly the same in the promissory contract, the court is informed by counsel for the appellant in his brief that no promissory contract was ever in fact given.

The legislative intent and purpose for enacting the "Blue Sky Law" is clear. The purpose of the present act and all previous acts has been to place the traffic of promoting and dealing in speculative securities under rigid governmental regulation and control to protect investors, thereby preventing, so far as possible, the sale of fraudulent and worthless speculative securities.

The term "speculative securities" was defined in *Moos v. Landowners Oil Ass'n.*, 136 Kan. 424, 15 P. 2d 1073, as follows:

". . . Speculative securities include those the value of which materially depends on proposed or promised future promotion or development, rather than on present tangible assets or conditions. . . ." (p. 431.)

In discussing the previous securities act the court in *State, ex rel., v. Consumers Cooperative Ass'n,* 163 Kan. 324, 183 P. 2d 423, said:

". . . Article 12, chapter 17, G. S. 1935, was written to prevent fraud in the sale of worthless securities, not to regulate the business of the company nor to raise revenue generally. . . ." (pp. 361, 362.)

The court in discussing the previous securities act said in *State v. Short,* 121 Kan. 233, 247 Pac. 114:

"While the statute is not as precisely drawn to avoid debatable problems of interpretation as might be desired, the legislative intent has been to place the traffic of promoting and dealing in speculative securities under rigid governmental control; and the only exemption therefrom is that accorded to the good-faith owner of such securities who acquires them and seeks to sell them on his own account in the ordinary course of business and not for the direct or indirect promotion of any blue-sky enterprise within the purview of the act." (p. 236.)

K. S. A. 17-1252 (since amended by L. 1967, ch. 121 and L. 1968, ch. 386) applicable at all times herein material, defines a security in subsection (*j*) to include "evidence of indebtedness" and "investment contract," among other things enumerated, and it includes an "interim certificate" for the right to subscribe to or purchase any of the foregoing items enumerated.

The appellant concedes the term "security" as above defined is extremely broad and encompasses practically all types of instruments including a promissory note. However, the appellant contends, the act was not intended to govern this type of a promissory note or this type of a situation. He argues first that there was no sale of any security, and second that this was not a speculative security calling for the protection of the securities act. Counsel for the appellant argues in his brief:

". . . The value of the note given by Mr. Hodge was not based upon promised future promotion or development. Its value was established and agreed to by all the parties according to the conditions existing at the time the money was borrowed. Mr. Hodge was to repay the parties a specific amount of money irregardless of future promotion, development, success or failure of the Tomal Company. Mr. Hodge neither acquired nor sold any speculative security. As a matter of fact, there was no security in existence at the time of this transaction. Perhaps Mr. Hodge brought a security into existence, but the act was not meant to govern this type of business activity."

On appeal this court is confined to the limited record made in the trial court upon the stipulated facts. By confining our review to the points raised by the appellant matters which do not appear in the record cannot be ignored. For example, the stipulation does

not disclose the identity of the Tomal Company, the nature of its business, or the extent of its assets. It may therefore be inferred from the appellant's argument and the record presented that the Tomal Company had no assets, other than those raised from transactions involving the issuance of the Receipt in Lieu of Promissory Contract in exchange for money.

Generally the term "security," which has no precisely defined legal definition aside from statutory provisions, has reference to written instruments, usually for the payment of money or to evidence a debt, and being more than a mere promise of the debtor of a general liability on his part has as collateral to it a pledge of property or some additional obligation. By common usage, however, the term has acquired a much broader meaning. It is now generally used to refer to instruments for the payment of money, or evidencing title or equity, with or without some collateral obligation, and which are commonly dealt in for the purpose of financing and investment. Instruments, whether secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed "securities." (*In re Waldstein,* 160 Misc. 763, 291 N. Y. S. 697 [1936]; and *United States v. Royal Loan Co.,* 61 F. Supp. 436 [E. D. Mo. 1945].)

In Kansas we are favored with a general statutory definition of the term "security" in the act, as heretofore paraphrased. The language defining a security in K. S. A. 17-1252 (*j*) presently under consideration is similar to the language in the federal act. (15 U. S. C. A. § 80a-2 [35].)

It has been said of the federal securities act that it is remedial in nature, to be liberally construed, and that in appraising contracts for the purpose of determining the applicability of the statute, courts readily look through the form to discover the real nature of the transaction; that labels affixed by the parties are of little moment. (*Securities & Exchange Commission v. Bailey,* 41 F. Supp. 647 [S. D. Fla. 1941].)

Another definition of the term "security" which has received judicial approval is the investment of money with the expectation of realizing a profit through the efforts of persons other than the investor. (*Securities and Exchange Com'n v. Universal Serv. Ass'n,* 106 F. 2d 232 [7th C. C. A. 1939]; *Brown v. Cummins Distilleries Corporation,* 53 F. Supp. 659, 663 [W. D. Ky. 1944]; *Securities and*

*Exchange Commisison v. Pyne,* 39 F. Supp. 434, 435 [D. Mass. 1941]; *Sperry & Hutchinson Co. v. Hudson et al.,* 190 Or. 458, 468 226 P. 2d 501; and 79 C. J. S., Security; Securities, pp. 941, 946.)

Looking through the form of the document entitled "Receipt in Lieu of Promissory Contract" to discover the real nature of the transaction, ignoring the label affixed by the parties, we find that the written document is issued to those persons participating *"in the special investment offer made by the Tomal Company."* (Emphasis added.) The written document clearly contemplates that the *Tomal Company* will pay twice the amount of the money advanced by the purchaser to such purchaser in one year's time, thus making it apparent the financial failure of the Tomal Company in its business venture, whatever it may have been, would result in a failure to pay in accordance with the terms of the written document issued by the appellant. The written document does not say Mr. Hodge will pay according to the terms of the promissory contract, but that the *Tomal Company* promises to pay in accordance with the terms of the instrument.

The appellant's attempt to establish the transfer of the documents in question (which he chooses to call promissory notes) to Mrs. Burkett and Mr. Buller as no more than borrowing transactions conveniently ignores the speculative aspect of the transactions and the recital in each document that it is issued to those persons participating in the special investment offer made by the Tomal Company. The transactions in question contemplate the presence of the investment process; that is, the investment of funds in contemplation of making a profit through the efforts of persons other than the investor. (*Sperry & Hutchinson Co. v. Hudson et al.,* supra.)

The document entitled "Receipt in Lieu of Promissory Contract" clearly fits within the term "evidence of indebtedness" defined as a security in 17-1252 (*j*), *supra,* and by construction easily falls within the term "investment contract" also defined as a security in the act. The transaction evidenced by the document is the kind of transaction the legislature intended to regulate by the securities act.

Construing the documents in question, therefore, in the light of the foregoing authorities, we hold, as a matter of law, they are securities within the contemplation of K. S. A. 17-1252 (*j*), and under the provisions of K. S. A. 17-1255 it was required that such securities be registered.

The appellant contends there was no sale or offer to sell a security.

The applicable section of the securities act is K. S. A. 17-1252 (h), which in pertinent part reads:

"(1) 'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. (2) 'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value. . . ."

The transactions here in question between the appellant and the two purchasers fit precisely in the statutory criteria. The appellant, in the two instances considered by the trial court, clearly was offering to dispose of and did dispose of a security for value. Mrs. Burkett paid the appellant $2,500 in exchange for her security, and Mr. Buller paid the appellant $500 in exchange for his security.

Under the federal securities act it has been held that the giving of a promissory note in exchange for a personal loan is a "sale" under the act, where the notes in question were offered to the public. (*Llanos v. United States*, 206 F. 2d 852 [9th Cir. 1953]; and *Securities and Exchange Commission v. Vanco, Inc.*, 166 F. Supp. 422 [D. N. J. 1958].)

The appellant contends commercial paper is exempt from the Kansas securities act by K. S. A. 17-1261 (i).

K. S. A. 17-1255 provides in part:

"It is unlawful for any person to offer or sell any security in this state, except securities exempt under section 10 [17-1261] or when sold in transactions exempt under section 11 [17-1262], . . ."

The only specific exemption asserted by the appellant on appeal to this court is the provision in K. S. A. 17-1261 (i). It is to be noted none of the exempt transactions specifically enumerated in K. S. A. 17-1262 is asserted by the appellant as a ground for reversal in this action.

K. S. A. 17-1261 pertaining to exempt securities provides that sections 17-1255 to 17-1260, inclusive, of the General Statutes Supplement of 1957, or any amendments thereto, shall not apply to any of the following securities: (Subsection (i) provides in part:)

"(i) Any commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within nine (9) months of the date of issuance, exclusive of days of grace, or any renewal of such paper which is likewise limited, or any guarantee of such paper or of any such renewal: . . ."

It must be conceded promissory notes by the law-merchant fall under the designation of commercial paper. The appellant contends

the instruments referred to in exhibits Nos. 1 and 2 attached to the stipulation are each clearly nothing more than a promissory note containing a promise to repay money within a specified time. He argues it is commercial paper arising out of a current transaction and evidences an obligation to pay cash within nine months from the date of issuance.

The fallacy in the appellant's argument lies in the fact that 17-1261 (*i*), *supra*, extends the exemption only to commercial paper transactions calling for payment within a period of nine months from date of issuance. The reasons for this particular limitation are discussed in "Draftsmen's Commentary to § 402 (*a*) (10)" of the Uniform Securities Act (*Blue Sky Law*, Loss and Cowett [1958], p. 361). In discussing the reasons for the nine-month exemption in the uniform act it is said:

".  .  . The period was here fixed at nine months rather than twelve months for two reasons: First, paper with a maturity of more than ninety days, or nine months in the case of agricultural paper, is not currently eligible for rediscount at the Federal Reserve Banks. Secondly, the period in the comparable exemption contained in § 3 (*a*) (3) of the Securities Act of 1933 is nine months, and the major commercial paper market is a nationwide market, so that paper would have to be restricted to a nine-month maturity in order to be exempted under the federal statute.  .  .  ."

The appellant conveniently overlooks the plain fact the documents in question call for final payment one year after the date of issuance. Assuming these documents to be promissory notes, as the appellant contends, they do not fall within the statutory exemption asserted.

By selling the securities in question the appellant was engaged in business as a "broker-dealer" as defined in K. S. A. 17-1252 (*c*), and the provisions of K. S. A. 17-1254 made it unlawful for him to engage in business in the state of Kansas as a broker-dealer without having been registered as a broker-dealer under this section.

The next point raised by the appellant is that the trial court erred by instructing the jury regarding the term "willfully" as used in K. S. A. 17-1267.

K. S. A. 17-1267 prescribes the penalties for violations of the act and reads in part:

"(*a*) Any person who willfully violates any provision of this act except section 13 [17-1264] or who willfully violates any rule or order under this act, or who willfully violates section 13 [17-1264] knowing the statement made to

be false or misleading in any material respect, shall upon conviction be fined not more than five thousand dollars ($5,000) or imprisoned not more than three years, or both; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order. . . ."

Over objections of the appellant the trial court instructed the jury in its instruction No. 2 as follows:

"The word 'willfully' as used in the charges laid in the Information denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental.

"In this connection you are instructed that one is presumed to have intended the natural and probable consequences of his voluntary acts."

The appellant contends he was prejudiced by such an instruction because it strikes down the presumption of innocence to which every defendant in a criminal action is entitled. He argues the instruction in effect negates the prosecution's duty to prove intent as an element of the crime; that the crime the appellant is alleged to have committed is a crime of specific intent. In support of his proposition, the appellant cites *Bloch v. United States,* 221 F. 2d 786 (9th Cir. 1955), which involved the prosecution of a taxpayer for willfully attempting to evade or defeat the payment of his income tax.

The court in *Bloch* held an instruction to be erroneous and prejudicial. It said the act required a *specific intent* involving the bad purpose and evil motive of the person accused to evade or defeat the payment of his income tax, and that a specific intent was an essential element in the offense. The instruction was to the effect that a person is presumed to intend the natural consequence of his acts, and the court said it had no place in the case—it being a conclusive presumption which testimony could not overthrow without effectively eliminating intent as an ingredient of the offense.

Upon careful analysis the *Bloch* case and those which follow it must be distinguished from the case presently under consideration. There a specific intent involving the bad purpose and evil motive of the accused to evade or defeat the payment of income tax was required. No specific intent is necessary to constitute the offense where one violates the securities act except the intent to do the act denounced by the statute. (See annotation, Blue Sky Laws, 87 A. L. R. 42, at p. 151.)

In speaking of the term "willfully" used in that portion of the

Uniform Securities Act, from which K. S. A. 17-1267 was derived and adopted, it is said in Blue Sky Law, Loss and Cowett (1958), p. 273:

"As the federal courts and the SEC have construed the term 'willfully' in § 15 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78o (b), all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing. . . ."

This is the substance of the trial court's instruction in the instant case, and we cannot say on the record presented that the trial court erred in giving the instruction or that the appellant was prejudiced by it.

The next point raised by the appellant is that 17-1267 (a), supra, denies equal protection and due process of the law.

The appellant contends a criminal statute must be definite; that those who would or could come within the purview of the statute should not have to guess what acts are prohibited, nor should they have to guess what act or acts they should perform—that the crime committed must be defined in the statute with appropriate definiteness. (Citing State, ex rel., v. Fleming Co., 184 Kan. 674, 682, 339 P. 2d 12; and Winters v. New York, 333 U. S. 507, 92 L. Ed. 840, 68 S. Ct. 665.)

The appellant makes specific reference to the proviso in 17-1267 (a), supra, which states, "but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order." Counsel for the appellant argues:

"Presumably one could be guilty of violating the act by simply doing what Mr. Hodge did. However, if one were charged with violating a rule or order under the act, he could show his ignorance of the rules and/or orders under this act and not be punished, at least he would not go to jail. In the second instance the statute purportedly assumes knowledge on the part of the culprit, yet if he proves no knowledge, he is excused. Too, the burden of proof in this instance is shifted from the prosecution to the defendant; he must take the stand and prove he had no knowledge of the securities laws. Such an exception is not granted to the person who allegedly violates any provision of the Chapter 17, Article 12, although both phrases above referred to use the word willfully."

It is then argued by the appellant, if knowledge is presumed in one section of the statute, it should be presumed in all sections of the statute.

It should be noted 17-1267, supra, is adopted practically verbatim from the Uniform Securities Act, and in this regard the following comment is made in Blue Sky Law, Loss and Cowett (1958), p. 389:

"The provision that no person may be imprisoned for violation of a rule or

order if he proves that he had no knowledge of it is found in all of the SEC statutes. Since not all states have an Administrative Procedure Act, and administrative rules and orders are not always easy to find, such a provision seems even more essential at the state level. . . ."

This provision rather than being unjust and unfair permits one charged under the act to prove he had no knowledge of a particular rule or order, thus offering him an opportunity to obtain relief from certain of the penal provisions of the act.

We fail to see merit in the argument made by the appellant that the provisions of 17-1267 (*a*), *supra*, are susceptible of more than one interpretation. The act defines a security with as much precision as seems to be advisable and states in language which is understandable that which shall be unlawful. (See *Sperry & Hutchinson Co. v. Hudson et al.*, supra.)

The next point raised by the appellant is that Chapter 17, Article 12 fails to provide adequate standards or guidelines to govern the securities commissioner.

The securities commissioner of Kansas is charged in K. S. A. 17-1270 (*a*) with the administration of the act. He is to be appointed by the state corporation commission.

K. S. A. 17-1267 (*b*) provides:

"(*b*) The commissioner may refer such evidence as may be available concerning violations of this act or of any rule or order hereunder to the attorney general or the proper county attorney, who may in his discretion, with or without such a reference, institute the appropriate criminal proceedings under this act."

The appellant contends the legislature failed to establish sufficient standards and guidelines to govern the securities commissioner in that it has vested him with an arbitrary discretion to govern or not govern the rights or property of individuals, and has failed to prescribe a uniform rule of action. The appellant's argument seems to be that the commissioner has arbitrary power to decide whether a transaction shall be prosecuted on the ground that it is not exempt by K. S. A. 17-1261 (*i*), as in the instant case.

The appellant overlooks the fact that arbitrary power is not vested in the commissioner to prosecute a given violation. Section 17-1267 (*b*) specifically gives the attorney general or the proper county attorney authority, *with or without* a reference to violations under the act by the commissioner, the authority to prosecute violations of the securities act. Furthermore, the section is to be construed as giving the attorney general or the proper county attorney the dis-

cretion to institute the appropriate criminal proceedings under the act, whether the case has been referred to one or the other of them by the commissioner or not. This is consistent with administration of the criminal law generally in Kansas.

The appellant's argument further has no merit because it overlooks the review proceedings provided in K. S. A. 17-1269 where any person is aggrieved with an order or decision of the commissioner.

The final point raised by the appellant is that the state failed to prove the charges contained in the information, and that the evidence was insufficient to prove beyond doubt that a crime had been committed.

On this point the appellant argues there can be no crime if there has been no "sale" of a security or "offer to sell" a security, and if this is so, there was no necessity of registering as a broker-dealer.

This argument has heretofore been answered, and we hold the stipulation of evidence and the exhibits attached thereto were sufficient as a matter of law to establish that the instruments in question were securities under the Kansas law, and the transactions involved were prohibited by the act and were sufficient to sustain a conviction on each of the four counts in the information.

The judgment of the lower court is affirmed.